William Francis DYE,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C7–86–2096.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Review Denied Oct. 28, 1987.

C. Paul Jones, Public Defender, J. Christopher Cuneo, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Thomas Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

William Francis Dye was convicted of second degree murder and his conviction was affirmed by the Minnesota Supreme Court in 1983. *State v. Dye*, 333 N.W.2d 642 (Minn.1983). Dye petitioned for post-conviction relief. The postconviction court denied the motion and Dye appealed. We affirm.

## FACTS

Shortly after 11 p.m. on Sunday, March 29, 1981, Dye entered Pontillo's Pizza at Grand and Cleveland in St. Paul through the back door. He wore a mask to conceal his identity and carried an automatic pistol. Dye told the employees to get down on the floor and ordered the assistant manager to get up and get the money from the cash register. As the assistant manager rose to attempt to comply with the commands, Dye fired one shot at fairly close range, killing the assistant manager. Dye then fled the scene.

Later that week Frank Kranz told authorities that Dye had discussed robbing Pontillo's a week or two prior to the murder. Dye had asked Kranz to drive for him and had taken Kranz through a dry run of the robbery. Dye even showed Kranz a pistol he planned to use in the robbery—a pistol which met the description of the type used in the murder.

Kranz, with the help of the police, made recorded telephone calls to Dye to induce Dye to make admissions. In one call Kranz discussed the investigatory actions of the police and suggested Dye dispose of

the murder weapon. Immediately after the call, Dye got into his car and drove to a wooded location near the University of Minnesota campus. Police following Dye saw him carry a small brown parcel over a stone wall and disappear behind a tree momentarily. Dye left the area without the package. The officers searched the area and found a brown shaving kit hidden in the hollow of a tree. The kit contained a stocking cap and pistol. The cap was similar to one witnesses stated the murderer had worn and it contained hair consistent with Dye's hair. Experts concluded this pistol had fired the fatal shot at Pontillo's. The officers arrested Dye and searched his home and car. They found a pair of gloves which were found to contain barium and antimony consistent with a finding of gunshot residue.

At trial the state introduced the testimony of Deck Brewer, Dye's cell mate while awaiting trial. Brewer testified Dye insisted on discussing the charges against him, despite Brewer's reluctance to listen. Dye admitted to Brewer he had hidden the gun in a tree, but had planned on testifying that Kranz had put it there and told Dye to go and check on it. Dye told Brewer he hadn't gotten rid of the gloves because he had worked on his car and the chemicals on the gloves could have been caused by the chemicals from the car. Finally, Dye admitted to Brewer he had committed the robbery and used the gun in the robbery, but never stated "in so many words" he had killed anyone.

The jury found Dye guilty of second degree murder and Dye was sentenced to 298 months incarceration. The supreme court affirmed the conviction and Dye sought postconviction relief. His motions were denied and he appeals.

## ISSUE

Did the postconviction court err in denying appellant a new trial on the grounds of (a) false or perjured testimony; (b) newly discovered evidence; or (c) discovery violations?

## ANALYSIS

At the postconviction hearing, Dye presented three grounds in support of his motion for a new trial: (a) false or perjured testimony; (b) newly discovered evidence; and (c) discovery violations.

### False or Perjured Testimony

Dye claims Deck Brewer, a key witness for the state, changed his testimony to accommodate the state's theory of the case, thus testifying falsely or perjuring himself. At trial Brewer testified that Dye had stated he had used different wheels on his car so police could not link any tire impressions to him. The police officer who had interviewed Brewer prior to trial interpreted this statement to mean Dye had used a different car. The officer wrote in his report that Dye told Brewer he had used a different car for the crime. Thus, the officer's report regarding Brewer's statement and Brewer's trial testimony appear to conflict.

Additionally, Dye presented testimony of a tire expert at the postconviction hearing. From photographs taken at the scene of the crime, the expert was able to identify the model of tire that had made the impression in the Pontillo's parking lot. A second expert testified that the model of tire which made the imprint at Pontillo's could have been placed on Dye's car, but that the tire is too large for the wheel wells. With that size tire, the car could only be driven at 10 m.p.h. and straight ahead. Additionally, any attempt to drive the car at higher rates of speed would have resulted in it being "rather noisy". Dye claims the new expert testimony establishes that Brewer had lied about what he had heard from Dye with respect to changing the wheels after the crime.

■ A new trial may be granted on the grounds of false or perjured testimony where:

(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

(b) That without it the jury *might* have reached a different conclusion.

(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*State v. Caldwell,* 322 N.W.2d 574, 584–85 (Minn.1982) (emphasis in original). A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts which warrant a reopening of the case. *Berry v. State,* 364 N.W.2d 795, 796 (Minn.1985).

■ The postconviction court concluded no false or perjured statements had been used at trial. It found the mere fact that certain testimony was not identical with pretrial statements, for reasons the state can explain, does not permit the inference that the trial testimony was false. Thus, the first element of the *Caldwell* test is not met; the postconviction court was not "reasonably well satisfied" that the testimony in question was false. We cannot say the trial court erred in this conclusion.

The postconviction court also concluded the evidence presented at the postconviction hearing, even if true, would not have been grounds for granting postconviction relief; it found the jury verdict would not have been affected by the evidence presented by Dye. The trial court did not err in this conclusion. Thus, Dye also fails to meet the second element of the *Caldwell* test. Even if Brewer's testimony was false or perjured, there was sufficient evidence to establish Dye's guilt. *See State v. Dye,* 333 N.W.2d 642, 643 (Minn.1983) (evidence against Dye on identity and intent "was so strong that it would serve no useful purpose to summarize it here").

Finally, the postconviction court stated that written summaries of police interviews with Brewer were provided to Dye prior to trial and were in fact used by defense counsel to cross examine Brewer. Consequently, Dye is unable to claim any surprise; he fails to meet the third element of the *Caldwell* test. Because the testimony

in question was not false or perjured, would not have changed the outcome of the case, and Dye is unable to claim any surprise, we affirm the postconviction court's denial of relief.

### Newly Discovered Evidence

At trial, state's witness Frank Kranz testified he had only seen the murder weapon once for a very short time when Dye showed it to him. Dye presented evidence at the postconviction hearing in an attempt to establish Kranz had, in fact, been the former owner of the murder weapon, thereby impeaching Kranz. Dye's witness at the postconviction hearing, Thomas Meldahl, testified that he had sold the weapon in question to a tall stocky man with a beard and wearing a leather jacket but whose name he did not know. The sale had taken place in a bar in St. Paul sometime prior to the crime in 1980 or 1981.

■ The decision whether to grant a new trial based upon newly discovered evidence rests with the trial court and will not be disturbed unless there is an abuse of discretion. *Berry v. State,* 364 N.W.2d 795, 796 (Minn.1985). In order to be entitled to a new trial on the basis of newly discovered evidence the petitioner must establish:

that the evidence could not have been discovered through the exercise of due diligence before the trial; that at the time of the trial the evidence was not within petitioner's or his counsel's knowledge; that the evidence is not impeaching, cumulative, or doubtful; and that it would probably produce a result different from or more favorable than that which actually occurred.

*State v. Caldwell,* 322 N.W.2d 574, 588 (Minn.1982).

■ The postconviction court ruled Meldahl's testimony was "internally inconsistent, vague and improbable" and did not constitute newly discovered evidence. The court concluded this evidence, even if true, was not inconsistent with any element of proof in the state's case. These conclu-

sions are reasonable and within the court's discretion. Meldahl was unable to positively identify the person he sold the murder weapon to, was confused about the date of the sale and offered no explanation for how he could have discerned the sale of a gun four years earlier was of interest to Dye's case. Finally, the evidence appears to be merely impeachment evidence. Even if Meldahl had sold Kranz the gun, no element of the state's case is shaken. The state introduced conclusive evidence that Dye held the gun on the night of the murder and that he held it ten days later when he attempted to dispose of it. The state's evidence did not depend upon where the gun was prior to the crime. We affirm the postconviction court on this issue.

### Discovery Violations

■ Dye claims the state failed to disclose a material fact about one of its witnesses. State's witness Joseph Anderson testified at trial he saw a car speed away from the scene of the murder. He later identified Dye's car at an impound lot and was "pretty sure" it was the car he saw on the night of the murder. Dye claims he spoke with Anderson after the trial and Anderson told him he once worked at Pontillo's, knew the victim of the crime, and that police officers convinced Anderson to positively identify Dye's car or "the murderer would go free." Unfortunately, Dye was unable to locate Anderson to take his testimony. Instead, Dye came to the postconviction hearing ready to testify himself to the substance of the conversation with Anderson. The postconviction court ruled Dye's proposed testimony was hearsay and did not fall within any exception to the hearsay rule. Dye contends the postconviction court erred in failing to apply Minn. R.Evid. 804(b)(5) to admit this testimony. In order for evidence to be admissible under Rule 804(b)(5), the following conditions must be met:

1. The declarant must be unavailable;

2. The statement must have circumstantial guarantees of trustworthiness;

3. The statement must be offered as evidence of a material fact;

4. The evidence must be more probative on the point for which it is offered than other evidence which the proponent can procure through reasonable effort;

5. Admission of the statement must serve the interests of justice and the purposes of the rules of evidence;

6. The adversary must be given advance notice of the proponent's intention to offer the statement, details about the content of the statement, and the name and whereabouts of the declarant.

*State v. Daniels,* 361 N.W.2d 819, 829 (Minn.1985).

■ The postconviction court ruled there were no circumstantial guarantees as to the trustworthiness of the testimony and it therefore did not fall within the exception of Minn.R.Evid. 804(b)(5). Given Dye's strong interest in the outcome of this case, the postconviction court was correct in concluding there were no circumstantial guarantees of trustworthiness to the hearsay statements. As respondent correctly observes, "[i]f any accused could get a new trial by testifying to what a state's witness told him over the phone supposedly recanting trial testimony—without further corroboration or the presence of the state's witness to deny or explain away the accused's testimony—prisons would fast be emptied." Because there were no circumstantial guarantees of trustworthiness to the hearsay statements we affirm the postconviction court's decision to exclude Dye's testimony.

■ When Dye made an offer of proof regarding these hearsay statements the state conceded both the prosecutor and the investigating officer were aware Anderson had worked at Pontillo's. This information was not included in any police report or in any testimony at trial. Dye claims this was a discovery violation in that the state failed to disclose the potential bias of a

material witness and this constituted exculpatory information. The state claims neither the prosecutor nor the investigating officer were able to remember whether they knew this information prior to trial. Dye argues it is unlikely the state discovered this information after the trial, as the investigation of the case was concluded.

The prosecution must disclose to the accused all evidence that is both favorable to the accused and material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). A constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 3384. In *Bagley*, the prosecutor failed to disclose, after having been specifically requested to do so, that the state's witnesses had been induced to testify. *Id.* The Supreme Court remanded the matter "for a determination whether there is a reasonable probability that, had the [impeachment evidence] been disclosed to the defense, the result of the trial would have been different." *Id.* at 3385.

In the present case the postconviction court ruled the state had not committed any discovery violations. The court ruled that even if the state knew Anderson had previously worked for Pontillo's, this would not constitute exculpatory material. Even if the jury were given this evidence to "impeach" Anderson, the result of the trial would not have been different. There was enough evidence to support the jury verdict even without Anderson's testimony.

The supreme court ruled several discovery violations had been committed by the state in Dye's case, but ruled Dye had suffered no prejudice from the violations. *Dye*, 333 N.W.2d at 644–45. Dye claims

the cumulative effect of these violations together with the newly discovered violation require a new trial. Since Dye suffered no prejudice from the first discovery violations, there is no cumulative prejudice to consider with Dye's latest claim of prejudice. The only issue to decide is whether the result of the trial would have been different had the defense known that Anderson had worked at Pontillo's. We rule the result would not have been different and affirm.

## DECISION

The postconviction court's denial of appellant's request for postconviction relief is affirmed.

Affirmed.