Robert Lee CRISLER, Petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. C1–94–96.

Court of Appeals of Minnesota.

Aug. 9, 1994.

Review Denied Sept. 28, 1994.

Douglas Voigt Hazelton, Minneapolis, C. Peter Erlinder, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by KLAPHAKE, P.J., and RANDALL and NORTON, JJ.

## OPINION

NORTON, Judge.

This appeal is from an order denying appellant Robert Crisler's postconviction petition. This is the second postconviction petition Crisler has filed challenging his conviction for attempted first degree murder. This court questioned jurisdiction over some of the issues raised in the appeal, which appeared to have been litigated in Crisler's first postconviction proceeding. We affirm.

## FACTS

Appellant Robert Crisler was convicted following a jury trial of attempted first-degree murder in the shooting of Jerry Campbell on October 2, 1986. Campbell was a counselor at a halfway house. He told police after the shooting that he had no enemies, and had no idea who shot him. The primary evidence against Crisler was the eyewitness testimony of his son, Robert Smith, who testified that he drove his father to the scene of the shooting and saw him fire several shots at a black man in a dark blue or black Chrysler.

In March 1987, Crisler was arrested following a domestic dispute. Based on statements made by Crisler's wife and by Smith, police searched a Burnsville house whose owner consented to the search. In the house police seized an Intratec .9 mm gun that expert testimony established could have fired the bullets recovered from Campbell's car. Crisler admitted this gun was his.

The state presented evidence that Crisler, a convicted felon, bought the Intratec gun through his cousin, Leon Roberts, from Harrison Davis, a weapons dealer. Davis testified at trial that he delivered the gun to Crisler's house on September 29, 1986. The state presented a handgun transfer form which showed Leon Roberts as the purchaser. This form was dated October 4, 1986, two days *after* the shooting. Although he was not questioned directly about this discrepancy, Davis testified that he could pinpoint the date of the transaction by his work schedule and his wife's being out-of-town. Davis told a Bureau of Alcohol, Tobacco and Firearms (ATF) agent that Roberts had dated the form and that he personally had paid no attention to the date, but he was sure the transaction did not take place on October 4.

Crisler knew Campbell from prison and other contacts. The state argued at trial that Crisler shot Campbell because of bizarre suspicions Crisler expressed that a Black Mafia was forcing his wife into prostitution. The state presented the testimony of Sally Chiaferi, Crisler's mother-in-law, that Crisler told her these suspicions, and named Campbell as a member of the Black Mafia involved. Chiaferi testified that Crisler called her in early October 1986 and told her he had taken care of the situation. Crisler confirmed in the conversation that it was Campbell he had "taken care of."

The jury convicted Crisler of attempted first-degree murder and he was sentenced in February 1988 to a presumptive term of 153 months. On direct appeal, Crisler challenged the adequacy of the *Miranda* warning given him before he admitted owning the Intratec. Crisler also challenged the sufficiency of the evidence, and raised a number of issues in his pro se supplemental brief. These included a claim of inadequate representation by counsel and a claim that the court erred in admitting into evidence three guns allegedly owned by Crisler. This court affirmed the conviction, and the supreme court granted review solely to clarify the *Miranda* issue. *State v. Crisler*, 438 N.W.2d 670, 670 (Minn.1989).

In his first postconviction petition, Crisler, among other claims, challenged the sufficien-

cy of the evidence, claimed inadequate representation by counsel and withholding of exculpatory evidence by the prosecution, and argued that another man, Dean Krueth, should have been considered a suspect in the shooting. The district court, following an evidentiary hearing, rejected all of these claims.

Crisler did not appeal the first postconviction order. Acting against the advice of his attorneys, he instead filed a federal habeas corpus petition, which was denied without prejudice. In 1993, Crisler filed a second postconviction petition in state court. This petition alleged that there was newly-discovered evidence in the form of (1) an affidavit by Tranell Seals stating Robert Smith was in Omaha, Nebraska on the day of the shooting; (2) an affidavit by a juror indicating exculpatory evidence newly presented to her would have changed her vote; and (3) a deposition by the victim, Jerry Campbell, in a workers compensation case in which he identified several potential suspects. The petition presented other claims that had been previously raised, at least in part.

The district court denied the second petition without holding a hearing. The court concluded that six of the eight claims raised in the petition had previously been litigated. The court rejected the remaining two claims, involving the Seals affidavit and the juror affidavit, on the merits. Crisler then appealed and this court questioned whether he could raise issues that had been decided in the first postconviction proceeding. The jurisdiction issue was then deferred for review by the panel deciding this appeal on its merits.

## ISSUES

1. Are all issues raised in the second postconviction petition properly before this court?

2. Is the evidence sufficient to sustain the postconviction court's denial of relief?

## ANALYSIS

### I.

■ The supreme court has held that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976); *see also, Dent v. State,* 441 N.W.2d 497, 499 (Minn.1989) (under *Knaffla,* postconviction claims that were previously raised need not be considered). Similarly, where a postconviction petitioner brings "a second or successive petition for similar relief" the district court may summarily deny relief. Minn.Stat. § 590.04, subd. 3 (1992).

Crisler contends that those issues previously raised should be considered in light of new information. The state argues that *Knaffla* bars reconsideration of these issues. We have decided to address several of Crisler's claims which were at least partially litigated before.

Crisler's claim that he was prejudiced by the admission of two guns that were unrelated to the shooting was raised in his pro se brief in his direct appeal and, under *Knaffla,* need not be considered again. His Fourth Amendment challenge to the admissibility of the Intratec gun was raised and decided in the first postconviction proceeding; the district court in the second postconviction proceeding properly denied his claim on that basis.

### II.

■ This court reviews a postconviction proceeding only to determine whether there is sufficient evidence to sustain the postconviction court's findings. *State v. Rainer,* 502 N.W.2d 784, 787 (Minn.1993). A postconviction court's decision will not be disturbed absent an abuse of discretion. *Id.* Crisler raises issues here regarding newly discovered evidence, ineffective assistance of counsel, and sufficiency of the evidence given this new information.

### A. Newly Discovered Evidence

■ In order to obtain a new trial based on newly-discovered evidence, a petitioner must establish:

that the evidence could not have been discovered through the exercise of due dili-

gence before the trial; that at the time of the trial the evidence was not within petitioner's or his counsel's knowledge; that the evidence is not impeaching, cumulative, or doubtful; and that it would probably produce a result different from or more favorable than that which actually occurred.

*State v. Caldwell,* 322 N.W.2d 574, 588 (Minn. 1982).

The district court found that the Seals affidavit was merely impeaching, of doubtful credibility, and unlikely to produce a different trial outcome. We agree. The effect of the Seals affidavit is merely to impeach Robert Smith's eyewitness testimony. *See id.* Moreover, the district court properly determined the affidavit was not of such a persuasive nature as to require an evidentiary hearing. *Cf. Shorter v. State,* 511 N.W.2d 743, 747 (Minn.1994) (where postconviction petitioner seeking withdrawal of guilty plea presents factual allegations "indicating need for a hearing," he should be given one). Here, no need for a hearing was indicated.

The district court properly dismissed the juror's affidavit as not warranting consideration. Five years after the trial here, the juror was shown isolated bits of new evidence, presented out of the context of the state's evidence and without benefit of cross-examination. The juror's affidavit bears little weight beyond an expression of second thoughts about the verdict. *See generally State v. Buchmann,* 380 N.W.2d 879, 883 (Minn.App.1986) (juror's claims of second thoughts cannot be used to impeach verdict). The affidavit does not prove that Crisler's newly-discovered evidence is material or that it would probably produce a more favorable result.

■ Crisler argues that the deposition testimony of Jerry Campbell, the victim, is newly-discovered evidence warranting a new trial. The record does not indicate that the issue of the Campbell deposition was presented in the first postconviction proceeding.

The Campbell deposition was taken eight months before trial. There is no basis in the record to support Crisler's claim that the prosecution was in "constructive possession" of the Campbell deposition and improperly failed to disclose it to the defense. But, even assuming there was a discovery violation, a new trial would be warranted only if the deposition is material, in the sense that it creates a reasonable doubt that otherwise would not exist. *State v. Glidden,* 459 N.W.2d 136, 138 (Minn.App.1990) (citing *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976)).

The Campbell deposition does not meet this standard. Campbell had a motive to suggest work-related suspects in the shooting, because this would help him obtain workers' compensation disability benefits. He apparently did not, however, give these names to police to investigate. The Campbell deposition is not material evidence, nor is it newly-discovered evidence that would probably produce a more favorable outcome. *See State v. Bliss,* 457 N.W.2d 385, 391 (Minn.1990) (to be grounds for a new trial, newly-discovered evidence must have capacity to produce a more favorable result).

■ Crisler next contends that the transfer form for the Intratec weapon was not fully disclosed to him and that the date on the form establishes that he could not have had the weapon at the time of the shooting. The first postconviction court found that Crisler's trial counsel knew about the form and the date discrepancy. Crisler now emphasizes that counsel did not have access to the *completed* form. But counsel was aware of the date discrepancy, which is the material issue raised by the form. There is no indication the completed form constitutes either material newly-discovered evidence or exculpatory evidence unlawfully withheld. *See generally Dye v. State,* 411 N.W.2d 897, 902 (Minn.App.1987) (*Brady* discovery violation occurs only if withheld evidence is material), *pet. for rev. denied* (Minn. Oct. 28, 1987).

■ Finally, Crisler presents another issue that was at least partially aired in the first postconviction proceeding. William Mondragon, a resident at the halfway house where Campbell worked, testified at the first postconviction hearing. Mondragon testified he saw a Datsun that looked like a car driven by another former resident at the halfway

house, Dean Krueth, leaving the scene of the shooting. The state, however, countered this statement with documents showing Krueth was still in prison on the day of the shooting, and was not released until three days later.

Crisler now claims Mondragon's statement casts suspicion on others associated with Krueth, even if Krueth himself has an iron-clad alibi. Crisler claims that both Campbell and Mondragon thought that the car involved in the shooting had a manual transmission, whereas Crisler's car had an automatic transmission. Mondragon, however, testified that he could not hear any sounds indicating whether the car had an automatic or manual transmission.

Mondragon's statement is of the same speculative nature as the Campbell deposition. The identification of Krueth's car at the scene may open up some leads for further investigation, as would Campbell's suspicions, but there is no other solid evidence linking an associate of Krueth to the scene. Since Krueth's incarceration eliminates him as a suspect, the Mondragon statement cannot be considered material evidence. It merely impeaches Robert Smith's description of the car used in the shooting. *See generally State v. Caldwell,* 322 N.W.2d at 588 (newly-discovered evidence which is merely impeaching does not warrant a new trial). Moreover, Mondragon was sitting inside, facing away from the scene of the shooting when the shots were fired.

## B. Effective Assistance of Counsel

■ Crisler argues that his attorney was ineffective because he did not discover, or further develop, these allegedly exculpatory leads. We address this issue although Crisler also claimed ineffective assistance on direct appeal and in his first postconviction petition, and this issue could be held to be barred. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741 (matter raised in direct appeal will not be considered in subsequent postconviction petition).

■ A defendant claiming ineffective assistance must show both that counsel's representation "fell below an objective standard of reasonableness" and "that there is a reason-

able probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gates v. State,* 398 N.W.2d 558, 561 (Minn.1987). In some instances, such as the handling of the transfer form issue, we have no difficulty concluding that trial counsel's representation here was more than adequate. Moreover, the failure to further investigate various leads is not error by defense counsel without a showing that significant exculpatory evidence could have been uncovered. *See Gustafson v. State,* 477 N.W.2d 709, 713 (Minn.1991) (trial counsel has discretion "to forego investigation of leads not reasonably likely to produce favorable evidence").

The major flaw in Crisler's argument is the lack of any showing on the second prong of the *Gates* test, establishing a reasonable probability that the result would have been different but for counsel's claimed errors. *See Scruggs v. State,* 484 N.W.2d 21, 26 (Minn.1992) (reasonableness of counsel's actions need not be evaluated if defendant cannot show prejudice). Because of the strength of the state's evidence, Crisler cannot show prejudice from any of the claimed errors of counsel.

At trial, the state presented eyewitness testimony of Smith, Crisler's son, that he saw Crisler fire the shots. Chiaferi, Crisler's mother-in-law, testified that Crisler admitted the act, although in a veiled manner. Smith was able to tell police details of the shooting scene that could only have been acquired by an eyewitness. Moreover, there was evidence, not significantly impeached even in postconviction proceedings, showing Crisler, a few days before the shooting, bought a weapon that could have fired the bullets found in Campbell's car.

Against this array of evidence, Crisler presents only the victim's questionable speculation about other suspects, an uncertain identification of a different car at the scene, an affidavit purporting to establish Smith's presence in Nebraska on the night of the shooting, and a dating problem with the weapon purchase form that was known to, and rejected as an issue by, defense counsel at trial. As the court in the first postconviction proceeding found, Crisler has presented

no credible evidence to undermine the testimony of either Smith or Chiaferi. There is no reason to believe that either the lack of the alleged newly-discovered evidence or the claimed errors of counsel materially affected the outcome of trial.

## DECISION

Two of the issues raised in this postconviction petition were previously raised and need not be considered. The record supports the postconviction court's order denying appellant's request for a new trial.

**Affirmed.**