**Thomas Daniel RHODES,
petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A07–148.**

Supreme Court of Minnesota.

July 19, 2007.

8. Although *Asherman* arose before *McKune,* it has never been overruled.

Thomas Daniel Rhodes, Bayport, MN, for Appellant Pro Se.

Lori Swanson, Minnesota Attorney General, Peter R. Marker, Assistant Attorney General, St. Paul, MN, Boyd Beccue, Kandiyohi County Attorney, Willmar, MN, for Respondent.

OPINION

GILDEA, Justice.

The district court denied, without a hearing, appellant Thomas Daniel Rhodes' petition for postconviction relief. Rhodes appeals to this court, arguing that the district court erred. We affirm.

The facts of this case are set forth in detail in *State v. Rhodes*, 627 N.W.2d 74 (Minn.2001) (*Rhodes I*), and *State v. Rhodes*, 657 N.W.2d 823 (Minn.2003) (*Rhodes II*). A jury found Rhodes guilty of premeditated first-degree murder, in violation of Minn.Stat. § 609.185(1) (1996), and intentional second-degree murder, in violation of Minn.Stat. § 609.19, subd. 1(1) (1996). The district court judge sentenced Rhodes to life in prison. Rhodes appealed to this court.[1]

In *Rhodes I*, we concluded that the district court did not abuse its discretion when it made several evidentiary rulings during the course of the trial. 627 N.W.2d at 86. We also concluded, however, that the postconviction court erred when it denied Rhodes' first petition for postconviction relief without conducting an evidentiary hearing, and we remanded for a hearing. Id. at 89.

On remand, the postconviction court heard evidence from several experts, Rhodes' trial counsel, and several lay witnesses. *Rhodes II*, 657 N.W.2d at 835. The postconviction court concluded that Rhodes failed to establish an ineffective assistance of counsel claim and denied relief. Id. at 838. The court also denied relief based on newly discovered scientific evidence. Id. at 839. Rhodes appealed to this court, contending that he should have been granted a new trial because he was denied effective assistance of counsel or, alternatively, because of newly discovered evidence. Id. Rhodes also argued that the evidence was not sufficient to convict him of murder. Id. We rejected Rhodes' claims, concluding that the evidence was sufficient to support the conviction, Rhodes was not denied effective assistance of counsel, and newly discovered evidence did not entitle Rhodes to a new trial. Id. at 842, 845.[2]

The current action arises from Rhodes' second petition for postconviction relief, which he filed on December 1, 2006. In this petition, Rhodes argued that he was denied due process of law because his conviction was based on "supposition and conjecture as newly discovered evidence proves," and he was denied effective assistance of counsel. The postconviction court denied Rhodes' petition without conducting an evidentiary hearing, and Rhodes appealed to this court.

■ We have cautioned that hearings should be held on petitions for postconviction relief unless the petition and supporting documents "conclusively show" that the petitioner is entitled to no relief. *State v. Cram*, 718 N.W.2d 898, 907 (Minn.2006) (internal quotation marks omitted). The postconviction court determined that Rhodes had failed to prove that he was entitled to relief. *See, e.g., Powers v. State*, 695 N.W.2d 371, 373–74 (Minn.2005) ("A petitioner seeking postconviction relief bears the burden of establishing the facts

---

1. Rhodes' appeal to this court was stayed so that he could bring a motion for postconviction relief before the district court. *Rhodes I*, 627 N.W.2d at 81.

2. Subsequently, Rhodes' petition for writ of habeas corpus in federal district court was denied, *see Rhodes v. Fabian*, No. Civ. 04–176RHKSRN, 2005 WL 2704896, at *1 (D.Minn. Sept.12, 2005), as was his application for certificate of appealability. *See Rhodes v. Fabian*, No. Civ. 04–176RHKSRN, 2005 WL 2704898, at *1 (D.Minn. October 20, 2005).

alleged in the petition by a fair preponderance of the evidence."). With the exception of legal determinations, which are reviewed de novo, we review a postconviction court's decisions for abuse of discretion. *See Schleicher v. State*, 718 N.W.2d 440, 444–45 (Minn.2006).

We turn first to Rhodes' claim that "new evidence" entitles him to relief. A petitioner is entitled to postconviction relief based on newly discovered evidence if he establishes (1) "that the evidence was not known to him or his counsel at the time of trial," (2) "that his failure to learn of it before trial was not due to lack of diligence," (3) "that the evidence is material," and (4) "that the evidence will probably produce either an acquittal at a retrial or a result more favorable to the petitioner." *Race v. State*, 417 N.W.2d 264, 266 (Minn.1987).

Rhodes submitted several pieces of "new evidence" to the postconviction court. Rhodes submitted an affidavit from a juror who had served on the jury in Rhodes' murder trial, and he argues that this affidavit entitles him to a new trial. In the affidavit, the juror stated: "I * * * was a juror on the murder trial of Thomas Daniel Rhodes. Since then I have been reading transcripts of the Post Conviction Petition Hearing. Based on what I have been reading, I am of the opinion that there should be a new trial." Rhodes argues that "'reasonable doubt' is clearly demonstrated by the Affidavit," and he is therefore entitled to postconviction relief.[3]

The juror's affidavit does not entitle Rhodes to postconviction relief. In essence, Rhodes' claim is that a jury should have been allowed to review the new evidence he presented at the postconviction proceedings that took place prior to *Rhodes II*. But we already considered this "new evidence" in *Rhodes II* and determined that it did not entitle Rhodes to a new trial. 657 N.W.2d at 846.[4] Rhodes

---

**3.** Rhodes bases his argument on *House v. Bell*, —— U.S. ——, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In *House*, the Supreme Court concluded that it was dealing with one of "certain exceptional cases involving a compelling claim of actual innocence," and therefore ruled that House's federal habeas corpus action could proceed even though it was procedurally barred under state law. *Id.* at 2068. The Court suggested that the petitioner's burden at the "gateway stage," to determine whether a federal habeas corpus action should proceed even though the claim has been procedurally forfeited under state law, "is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *Id.* at 2077. This standard is similar to the standard used under the fourth prong of our newly-discovered evidence test ("the evidence will probably produce either an acquittal at a retrial or a result more favorable to the petitioner"). Accordingly, even if the standard set forth in *House* (which the Court has indicated

is applicable in federal habeas corpus actions, not state postconviction proceedings) were applicable here, it would not change our conclusion that the district court did not err when it denied Rhodes' postconviction petition.

**4.** During the postconviction proceedings prior to *Rhodes II*, there was testimony from expert attorneys, medical experts, Rhodes' trial counsel, and lay witnesses. *Rhodes II*, 657 N.W.2d at 835. The postconviction court denied relief on Rhodes' ineffective assistance of counsel claim and his newly discovered scientific evidence claim. *Id.* at 838–39. We considered all of the issues raised in the postconviction proceedings and affirmed. *Id.* at 846. Specifically, we concluded that the testimony by the new lay witnesses was "dubious" and "substantially cumulative," and had little impact on "the physical, medical, and motive evidence presented at trial." *Id.* at 845. We also concluded that even if the new medical evidence was "ground-breaking research," the evidence was unlikely to result in an acquittal because the medical evidence did "not diminish the circumstantial evidence heard and considered by the jury." *Id.* at 846.

cannot litigate this question again based on the juror's affidavit. At most, the affidavit indicates that the juror believes there should be a new trial. This type of expression of second thoughts is not sufficient to warrant a new trial. *See Crisler v. State*, 520 N.W.2d 22, 25 (Minn.App.1994) ("Five years after the trial here, the juror was shown isolated bits of new evidence, presented out of the context of the state's evidence and without benefit of cross-examination. The juror's affidavit bears little weight beyond an expression of second thoughts about the verdict."), *rev. denied* (Minn. Sept. 28, 1994).

■ Even if we were to review the affidavit under the newly discovered evidence test, Rhodes would not be entitled to postconviction relief. The affidavit is not "new evidence" that has any bearing on the underlying facts of this case, and therefore it is not "material" under the third factor of the test. *See Race*, 417 N.W.2d at 266. We hold that the postconviction court did not abuse its discretion when it concluded that the juror affidavit did not entitle Rhodes to postconviction relief.

■ Rhodes also submitted as "new evidence" two newspaper articles regarding a plane crash in Green Lake in 1958, and the failure to find the plane until 2004. In essence, Rhodes claims that because the articles indicate that the body of the pilot was found in the southwest quadrant of the lake and the plane was discovered in the northwest corner, the articles constitute "new evidence" that the "uneven bottom" and unpredictable currents[5] in the lake could have been the reason that his wife's body was found almost nine-tenths of a mile from where he told searchers that he had last seen her. Rhodes has not shown that the information about the "uneven bottom" of the lake was not available to him or his counsel during his trial or that his failure to learn of it before trial was not due to lack of diligence. Thus, the evidence does not meet the first two factors of the newly discovered evidence test. *See id.*

Additionally, we note that nothing in the articles refutes the testimony offered at trial that it was "improbable that a body could sink in Green Lake, resurface, and then float nine-tenths of a mile in 13 hours." *Rhodes II*, 657 N.W.2d at 829. The articles indicate that the pilot's body was found two weeks after the plane crashed, but that information does not make it probable that a body could sink, resurface, and then float nine-tenths of a mile in 13 hours. Because the articles do not indicate that on retrial Rhodes probably would be acquitted, they do not satisfy the fourth prong of the newly discovered evidence test. *See Race*, 417 N.W.2d at 266. We hold that the postconviction court did not err in finding that the newspaper articles did not entitle Rhodes to postconviction relief.

■ Rhodes' third piece of "new evidence" relates to the life insurance policies on his wife's life and Rhodes' financial condition before his wife's death. As the postconviction court noted, this information "offer[s] nothing new" for the court to consider. Rather, Rhodes' argument is simply a reformulation of his claim at trial and on direct appeal that the state's evidence that he had a financial motive for the murder was unpersuasive. Because Rhodes made this argument on direct appeal, our decision in *State v. Knaffla* bars this postconviction claim for relief. 309 Minn. 246, 252, 243 N.W.2d 737, 741 (Minn.

---

5. Contrary to Rhodes' claim, there is no indication in the articles that there are unpredictable currents in Green Lake. The articles mention only the lake's "uneven terrain" and "uneven bottom."

1976) (holding that all claims raised by a defendant on direct appeal and all claims known but not raised at the time of that appeal are barred from review in a subsequent petition for postconviction relief); *see also Schleicher*, 718 N.W.2d at 447 (recognizing that the *Knaffla* rule also bars all claims that should have been known but were not raised on direct appeal).[6]

■■■ Separate from his claims of new evidence, Rhodes argues that he is entitled to postconviction relief on the basis of ineffective assistance of counsel. This argument is premised upon Rhodes' claim that his indictment "violated the Double Jeopardy provision of the Fifth Amendment * * * in that he was charged *twice* for the same offense." Rhodes argues that counsel was ineffective for failing to raise this defense. This claim is also barred by *Knaffla* because Rhodes knew or should have known to raise the argument on direct appeal.[7]

■■■ Finally, we examine Rhodes' claim that he is entitled to postconviction relief because he was convicted based merely on "speculation," or "supposition and conjecture." This claim is simply another way of arguing that the evidence was insufficient to convict. We resolved the sufficiency of the evidence claim in *Rhodes II*. 657 N.W.2d. at 842. Rhodes' restyled claim is therefore barred by *Knaffla*.

---

**6.** There are two exceptions to the *Knaffla* bar: (1) if a novel legal issue is presented, or (2) if the interests of justice require review and the petitioner has not deliberately and inexcusably failed to raise the issue on direct appeal. *White v. State*, 711 N.W.2d 106, 109 (Minn. 2006). Rhodes' claim does not fall within either exception.

**7.** Rhodes makes a "prosecutorial misconduct" argument based on similar grounds. This claim is barred by *Knaffla* for the same reason as the ineffective assistance of counsel claim. Moreover, even if we were to consider

We hold that the postconviction court did not abuse its discretion when it denied

Rhodes' petition for postconviction relief without conducting an evidentiary hearing.

Affirmed.

these claims they would fail on the merits because Rhodes was not prosecuted or convicted twice. The state charged Rhodes with both first-degree premeditated and second-degree intentional murder, and after the jury found Rhodes guilty of both counts, the district court convicted him of first-degree murder and sentenced him on that count. *See* Minn.Stat. § 609.035, subd. 1 (2006) ("[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses * * *.").