## STATE v. LESLIE KNAFFLA.

243 N. W. 2d 737.

June 25, 1976—No. 46111.

*John D. Furuseth,* for appellant.

*Warren Spannaus,* Attorney General, *Richard G. Mark,* Assistant Solicitor General, *Kent G. Harbison* and *Craig H. Forsman,* Special Assistant Attorneys General, and *Helen Hill Blanz,* County Attorney, for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from an order of the Itasca County District Court denying appellant's petition for postconviction relief. On June 7, 1974, appellant was convicted by a jury of the crime of simple robbery. He was sentenced on July 1, 1974, to an indeterminate term at the State Prison. On January 7, 1975, after the time for taking a direct appeal had expired,[1] he petitioned for postconviction relief. Although the postconviction court concluded that appellant had been denied a fair trial, the petition was denied due to appellant's failure to seek direct review of the conviction.[2] The sole issue presented is whether postconviction

---

[1] Minn. St. 632.01, now superseded by Rule 29.02, Rules of Criminal Procedure, provided that criminal cases could be removed by the defendant to the supreme court at any time within 6 months after judgment.

[2] By order of this court dated July 31, 1975, appellant was released from the custody of the commissioner of corrections and admitted to bail pending disposition of this appeal.

relief [3] should have been granted. We reverse.

On December 1, 1973, appellant and his two nephews, Noel Friend and Ricky Knaffla, began to drive from Finland, Minnesota, to Effie, Minnesota, to retrieve a motor belonging to Friend. While they were traveling west on Highway No. 1, a hitchhiker, Merlyn E. Mattson, known to appellant, was offered a ride. The group continued toward Effie, consuming beer and liquor over a period of several hours.

Throughout the course of the trip, Mattson harassed Ricky Knaffla regarding the length of his hair, threatening to cut it with his knife. As the party approached the intersection of Highway No. 6 and County Road No. 14, the automobile was stopped. As a result of Mattson's continued derogation and threats to Ricky Knaffla, appellant struck Mattson several times in the face, knocking him to the ground. Appellant then proceeded to kick him several times. Noel Friend stripped Mattson of his boots, trousers, and underclothing. Mattson's wallet containing $40 and the clothing were later found strewn nearby. Appellant and his nephews drove away, leaving Mattson lying in the road. Mattson died shortly after December 1, 1973, from causes unrelated to this incident.

Upon the petition for relief, the postconviction court considered the events of the trial. Included was the attempt by the state to impeach its witness, Noel Friend, through the use of a prior inconsistent statement. The statement, contained in a transcript of a taped interview between Friend and Itasca County Deputy Sheriff Wendal Gilbert conducted on December 10, 1973, and later signed and verified by Friend, read as follows:

"So we got outside there and Les [appellant] hauled off and hit him, started kicking on him, and I stopped him from that, and then he said to take his money from him."

At the trial, Friend repudiated this portion of the interview relating to the alleged robbery. Since the state claimed surprise

---

[3] Minn. St. c. 590.

at the denial in order to impeach the witness through the use of the prior inconsistent statement, evidence was introduced that one day prior to trial, in a conversation with the county attorney, the witness had denied stating that he had "seen him take that money." Although the state acknowledged the occurrence of this denial prior to trial, it was, upon proper foundation, permitted to impeach Friend by means of the prior inconsistent statement set forth above and disclaimed at the trial.

The trial court then directed the witness to leave the witness stand, position himself before the jury box, and read loudly that portion of the written statement which he had denied. After this reading, since the noise of the air conditioner had apparently made it difficult to hear the statements of several prior witnesses, the court inquired whether all the jury members had been able to hear the statement.[4]

At the conclusion of the trial, the court instructed the jury to return one of six verdicts: a finding of guilty of one of three degrees of assault; a finding of guilty of one of two degrees of robbery; or acquittal. The trial court also instructed the jury as to the elements of robbery, and, in particular, as to "taking," as follows:

"In considering the next element, whether the defendant did take personal property from the person of or in the presence of Merlyn Mattson, you are instructed that the property in question must be severed from the possession of Merlyn Mattson, and must be absolutely controlled by the defendant, even though for just an instant. However, any movement of the property is sufficient and the subsequent retention of the property by a taker is not essential."

The postconviction court concluded that the trial court had committed prejudicial error in its treatment of the prior incon-

---

[4] The court had also asked Ricky Knaffla to turn toward the jury so that he could be heard over the air conditioning. In addition, at another point in his testimony, the court instructed Friend to speak toward the jury.

sistent statement of the witness Friend, and in its instruction relative to the element of "taking" required to establish the crime of robbery. The court found that the manner of presentation of the statement overemphasized evidence which, if at all admissible, is only admissible for a limited purpose.

It is well established that proper impeachment evidence includes prior inconsistent statements. Zuber v. N. P. Ry. Co. 246 Minn. 157, 74 N. W. 2d 641 (1956). However, the use of such evidence to impeach one's own witness requires that counsel establish surprise at the witness' statement contradicting his former statement. State v. Armstrong, 257 Minn. 295, 101 N. W. 2d 398 (1960). In the instant appeal, some question is raised as to the state's claim of surprise in light of the witness' denial to the county attorney on the previous day. As this is a preliminary determination to be made by the trial court, we will not reverse absent a clear abuse of discretion. State v. Guy, 259 Minn. 67, 105 N. W. 2d 892 (1960).

Upon review, the postconviction court concluded that there existed a sufficient basis for the state to claim a lack of actual knowledge that Friend would deny that defendant had said to take Mattson's money, rather than to claim surprise. The court stated, however, that although the mere admission of this evidence was not so prejudicial as to deny appellant a fair trial, the manner of its presentation to the jury was sufficiently prejudicial to have that effect.

The state contends that the trial court required that particular presentation to assure the jury's complete review of all evidence in light of the distraction created by the faulty air conditioner. It asserts that even if the manner of presentation was prejudicial, this did not outweigh the probative value of the evidence to test the credibility of the witness. In support of this conclusion, the state emphasizes the court's instruction that the statement was to be considered "only for the purpose of testing the believability and weight of that witness's testimony, and for no other purpose."

Clearly placed at issue is whether the trial court's action with regard to the prior inconsistent statement was sufficiently prejudicial to require postconviction relief pursuant to Minn. St. c. 590. Resolution of this focal question depends on whether the postconviction court correctly determined that, although it found the manner in which the statement was presented to the jury so prejudicial as to require a new trial, the court was precluded from granting relief because appellant had failed to seek direct review of the conviction.

Historically, Minn. St. c. 590 was enacted as a legislative response to the United States Supreme Court's pronouncement in Case v. Nebraska, 381 U. S. 336, 85 S. Ct. 1486, 14 L. ed. 2d 422 (1965). In Case, a state prisoner's petition for habeas corpus, sought on the ground that the denial of assistance of counsel at trial violated his Federal constitutional rights, was dismissed by a Nebraska state court. The Nebraska Supreme Court affirmed on the basis that habeas corpus was unavailable to determine assertions of this nature. Upon certiorari to the United States Supreme Court, the judgment below was vacated and the case remanded on the ground that subsequent to the granting of certiorari the state legislature had enacted statutory postconviction procedure. Implied in the per curiam decision was the court's conclusion that a convicted defendant is entitled to at least one state corrective process to determine a claim of violation of Federal constitutional rights. The Nebraska state courts were therefore entitled to determine whether the new statute was applicable to petitioner's claims.

In promulgating Minn. St. c. 590, the legislature expanded upon the implications of Case v. Nebraska, *supra,* to allow postconviction relief not only where Federal and state constitutional issues are raised, but also upon a showing of a violation of state law.[5] Therefore, should the record show an insufficiency of evi-

---

[5] Minn. St. 590.01, subd. 1, provides in relevant part: "Except at a time when direct appellate relief is available, a person convicted of a crime, who claims that the conviction was obtained, or that the sentence or

dence to prove acts by appellant which constitute the crime of which he was convicted, whether or not the petition for post-conviction relief raises issues of constitutional magnitude[6] is immaterial. The salient feature of Minn. St. c. 590 in coordination with Case v. Nebraska, *supra,* is that a convicted defendant is entitled to at least one right of review by an appellate or post-conviction court. Upon a showing of either constitutional error or error in the admissibility or sufficiency of evidence so prejudicial as to require reversal, affirmative relief must be available. As stated in the Commentary to § 6.1, A. B. A. Standards for Criminal Justice, Standards Relating to Post-Conviction Remedies (Approved Draft, 1968), p. 86:

"'* * * In the main, post-conviction remedies exist to try fundamental issues that have not been tried before."

Thus, in a postconviction proceeding, relief is to be predicated, not upon a determination as to whether direct appeal from the conviction was taken within the prescribed time limitations, but rather upon compliance with the procedural requirements of Minn. St. c. 590. It must be emphasized, however, that where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief. To the extent that State v. Tyson, 298 Minn. 559, 214 N. W. 2d 461 (1974), is inconsistent with the principles espoused herein, it is overruled. In State v. Tyson, *supra,* we adopted A. B. A. Standards for Criminal Justice, Standards Relating to Post-Conviction Reme-

other disposition made violated his rights under the constitution or laws of the United States or of the state, may commence a proceeding to secure relief therefrom * * *."

[6] In Gaulke v. State, 289 Minn. 354, 184 N. W. 2d 599 (1971), we held that where the determinative issue is one of statutory and not of constitutional right, it may be asserted only upon direct appeal rather than by a petition for postconviction relief. In the instant matter, the time for direct appeal having expired, a petition for postconviction relief is proper to provide defendant with a review of statutory assertions.

dies (Approved Draft, 1968) § 6.1, which provides in pertinent part:

"(a)   Unless otherwise required in the interest of justice, any grounds for post-conviction relief as set forth in section 2.1 which have been fully and finally litigated in the proceedings leading to the judgment of conviction should not be re-litigated in post-conviction proceedings."

In the instant case the postconviction court readily admitted that the issues presented to it were difficult of resolution, and, in discussing the conviction of simple robbery, stated:

"* * * Yet without any evidence to suggest a larcenous purpose, defendant could be convicted of robbery under the court's instructions solely on the basis that his accomplice removed items of the victim's clothing and threw them to the roadway beside him. Something more than the citations furnished today is necessary to persuade me that such is the law in Minnesota."

Upon review of the evidence in the record, it appears that the sole evidence suggesting robbery is the statement of the witness Noel Friend, quoted *supra*, which he later denied. This evidence was admitted for the sole purpose of testing the credibility and weight of that witness' testimony, and not as substantive evidence of any crime.

As a matter of law we must conclude that the evidence of robbery is wholly insufficient upon which to submit either degree of robbery to the jury. This scintilla of evidence from the uncorroborated testimony of a convicted accomplice caused the post-conviction court to reason that, although there is ample evidence of assault to support its submission to the jury—

"* * * This is not a case where an innocent man stands convicted of simple robbery but rather one where on the evidence a guilty man has been convicted of the wrong crime by reason of errors occurring at trial."

Based upon the entire record, we conclude that a new trial is

indicated in accordance with this opinion. We therefore need not comment upon the specific elements of simple robbery as presented in the lower and postconviction courts.

Reversed.