Hanifi Marlow JIHAD, f/k/a Marlow
Devette Jones, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. CX–98–929.

Supreme Court of Minnesota.

May 6, 1999.

Hanifi Marlow Jihad, pro se.

Michael A. Hatch, Atty. Gen., St. Paul, Amy Klobuchar, Hennipen County Atty., Donna J. Wolfson, Asst. Hennepin County Atty., Minneapolis, for respondent.

## OPINION

LANCASTER, Justice.

Appellant, who was convicted in 1995 of one count of first-degree murder and one count of attempted first-degree murder, appeals from the district court's denial of his petition for postconviction relief. We affirm.

Appellant, Hanifi Marlow Jihad (formerly known as Marlow Devette Jones), was sentenced to concurrent sentences of 180 months and life imprisonment following his 1995 convictions for first-degree murder and attempted first-degree murder.[1] These convictions, which came at the conclusion of a jury trial held in Hennepin County District Court, stemmed from appellant's involvement in a shooting incident at a Minneapolis crack house. The under-lying facts to this incident are summarized in our decision affirming appellant's convictions on direct appeal:

> Appellant, who is also known as "Levi," lived periodically in a Minneapolis house located at 2817 Bryant Avenue North. The victims, Tavarian McDonald and Darren McKnight, sold crack cocaine from the house. According to testimony at trial, on January 9, 1993, appellant and co-defendant Jamie Pearson, entered the home, located McDonald and McKnight in the kitchen and pointed handguns at them. Pearson then moved through the house, directing others in the home, including Earline Donaldson (who apparently owned or rented the home), Houston Moorman, and Kenosha Larkin, into the kitchen. Pearson and appellant indicated that the house was their drug selling turf. McDonald and McKnight offered to leave, but Pearson and appellant instead demanded that they empty their pockets; the pair produced about $1,800 in cash. Appellant ordered Larkin and Donaldson to leave, and, shortly thereafter, fired at McDonald and McKnight. Outside, Larkin and Donaldson heard gunshots and both women hid in nearby bushes. From this vantage point, they observed Pearson, Moorman, and appellant leave the house and drive away. McDonald survived the shooting, but McKnight did not.

*State v. Jones,* 556 N.W.2d 903, 906 (Minn. 1996).

Appellant subsequently filed a petition for postconviction relief with the district court. In his petition, appellant alleged the following errors had occurred at trial which entitled him to either a reversal of his convictions or a new trial: (1) ineffective assistance of counsel; (2) improper admission of identification testimony from three witnesses who were "fruits of the poisonous tree" because their pretrial identifications "came soon after the illegal-

---

1. Appellant was also convicted of lesser-included counts of second-degree murder and second-degree attempted murder, as well as two counts of aggravated robbery. He was not sentenced on those counts.

ly obtained identification of Ms. Larkin"; (3) use of an "impermissibly suggestive" identification procedure with witness Tavarian McDonald; and (4) denial of appellant's request for a *Schwartz* hearing to investigate potential jury misconduct.

The district court denied appellant's petition for relief. The district court concluded that appellant's ineffective assistance of counsel argument lacked merit, as it pertained to a disagreement over trial strategy. The district court further concluded that appellant's objection to the identification procedure used for McDonald was not a novel claim, as it was almost identical to an issue appellant had raised on direct appeal regarding another witness. Finally, the district court concluded that appellant's other claims were procedurally barred because they had already been decided on direct appeal.

■■■ We review a postconviction proceeding only to determine whether there is sufficient evidence to sustain the postconviction court's findings, and we will not disturb a postconviction court's decision absent an abuse of discretion. *See State v. Walen*, 563 N.W.2d 742, 750 (Minn.1997) (citing *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn.1992)).

I. Ineffective assistance of counsel

■■■ The first ground for postconviction relief raised by appellant, ineffective assistance of counsel, was not raised on direct appeal. Appellant alleges that his counsel failed to object to the identification testimony presented by three eyewitnesses, and claims that he and his wife had to cajole his counsel into objecting to proposed jury instructions and asking for a mistrial. Appellant also alleges that his

counsel improperly advised him not to testify and that this advice was premised upon his counsel's failure to recognize that evidence of appellant's prior convictions could be suppressed.

■■■ We have previously held that the rule enunciated in *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), which generally precludes postconviction consideration of all issues known or raised at the time of direct appeal, applies to claims for ineffective assistance of counsel. *See Zenanko v. State*, 587 N.W.2d 642, 644 (Minn.1998) (barring ineffective assistance of trial counsel argument under *Knaffla* rule because it "could have been raised on direct appeal"); *Robinson v. State*, 567 N.W.2d 491, 494 (Minn.1997) (noting appellant raised issue of ineffective counsel in pro se supplemental brief). An exception to the *Knaffla* rule will be made only if a petitioner's claim is "so novel that its legal basis was not reasonably available at the time of the direct appeal" or in limited situations when fairness dictates that the petitioner be given a hearing. *Russell v. State*, 562 N.W.2d 670, 672 (Minn.1997) (citations omitted). Because appellant has not articulated a reason why we should, in the interests of justice, consider this claim available but not raised on direct appeal, we decline to consider appellant's ineffective assistance of counsel argument.[2]

II. "Fruits of the poisonous tree"

■■■ Appellant next raises the procedure used by the police to elicit from eyewitness Kenosha Larkin an identification of appellant from a photograph. The issue with the pretrial identification obtained from Larkin was raised by appellant and considered by us on direct appeal: "Depending on which testimony one credits, Larkin

---

**2.** The district court reviewed the substance of appellant's claim and found it to lack merit, as it reflected a disagreement over trial strategy. We have previously stated that we give particular deference to decisions of counsel regarding trial strategy and that questions of

"[w]hich witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel." *State v. Jones,* 392 N.W.2d 224, 236 (Minn.1986).

either saw appellant's photo through the backside of a memo a police officer was reading during the interrogation or the police officer showed her the picture outright." *Jones,* 556 N.W.2d at 912. On direct appeal we stated that "[t]aking into account all of the circumstances surrounding Larkin's opportunity to see appellant, we conclude that the admission of the identification into evidence was error. The admission of a tainted pre-trial identification raises significant due process concerns." *Id.* at 913. Nonetheless, we found that the error was harmless, as several eyewitnesses—namely, McDonald, Moormon, and Donaldson—identified appellant at trial as the shooter. *Id.*

In his postconviction appeal, appellant repackages the same objection he brought against Larkin's testimony on direct appeal to include an attack against the identification testimony provided by these three other eyewitnesses. Appellant asserts, without explanation, that the eyewitness testimony from these other individuals should have been suppressed as "fruits" of Larkin's identification because "these identifications came soon after the illegally obtained identification by Ms. Larkin."

Appellant's "fruits of the poisonous tree" argument is not only frivolous but procedurally barred; appellant's challenge to the identification procedure on direct appeal demonstrates this argument was known to him at that time. As noted above, a postconviction court will not consider matters that were either raised by, or known to, the petitioner at the time of direct appeal. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741. Even if appellant could establish that the other eyewitness identifications were procured as a result of the Larkin pretrial identification, this argument was available to him at the time of direct appeal.

## III. "Impermissibly suggestive" in-court identification procedure

■ Next, appellant challenges the "impermissibly suggestive" trial testimony of victim McDonald, who identified appellant as the gunman who shot him. Appellant attacks this identification testimony on several grounds, alleging that (1) McDonald's belief that appellant was the shooter was based not on his own perceptions but upon what other witnesses had told him after the incident; (2) McDonald's identification of appellant differed from earlier statements he had given that indicated that appellant's codefendant might have been the gunman; and (3) it was unfair to allow McDonald to describe his assailant in court while he could observe the appellant's physical description.

Appellant's dispute with the in-court identification testimony of McDonald is also an argument that was known to the appellant at the time of direct appeal. At trial, appellant's counsel attempted on cross-examination to point out the inconsistencies with McDonald's previous statement to police regarding the shooter's identity. When McDonald made his in-court identification of appellant, and pointed to him, appellant's counsel told the court he had no objection to the state's request that the record reflect the fact that McDonald identified appellant. When challenging the sufficiency of the evidence on direct appeal, appellant argued that McDonald's identification of appellant might have been tainted by his contacts with other witnesses. *Jones,* 556 N.W.2d at 913. Therefore, this new attack against the admission of McDonald's in-court identification simply raises an issue both known and raised by appellant at the time of direct appeal and is procedurally barred. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741.[3]

---

3. The district court also denied postconviction relief, concluding that appellant's attack against McDonald's testimony was "not a novel claim, as it simply mimicked the attack appellant made in his brief on direct appeal against Larkin's in-court identification."

IV. Denial of *Schwartz* hearing

▆▆▆▆ Finally, appellant argues the trial court erred by denying his motion for a *Schwartz* hearing. Following the completion of the trial, appellant filed a motion for a *Schwartz* hearing[4] after it came to his counsel's attention that two or three jurors had looked into the courtroom and seen appellant's codefendant, Jamie Pearson, present in the courtroom and wearing prison clothing. This was during a time when the court and counsel were considering whether Pearson would testify at appellant's trial. After Pearson refused to testify, the trial court and counsel agreed that a stipulated statement would be read into the record at trial stating that Pearson was present at 2817 Bryant at the time of the murder. *Jones,* 556 N.W.2d at 907.

In support of the motion for a *Schwartz* hearing, appellant argued that a hearing was necessary to determine whether the jurors who had seen Pearson in the courtroom had told other jurors about Pearson or had been prejudiced against appellant by having concluded that another jury had already convicted Pearson of the same offense. The trial court rejected appellant's motion for a hearing on the potential jury misconduct, noting that no evidence indicated the jurors had heard anything from the courtroom. The trial court also pointed out that an affidavit in support of the motion, provided by the appellant's wife, was "extremely questionable given the fact that her credibility is definitely an issue." Appellant knew of, but chose not to raise, the *Schwartz* argument on direct appeal. Therefore, it is procedurally barred. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741.

Having carefully reviewed appellant's claims, we hold that the district court did not abuse its discretion when it denied appellant's petition for postconviction relief.

Affirmed.

---

4. *Schwartz v. Minneapolis Suburban Bus Co.* established a method for inquiring into allegations of juror misconduct. 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). A defeated party must establish a prima facie case of jury misconduct before a *Schwartz* hearing is required. *See State v. Larson,* 281 N.W.2d 481, 484 (Minn.), *cert. denied,* 444 U.S. 973, 100 S.Ct. 467, 62 L.Ed.2d 388 (1979). The decision whether to grant a *Schwartz* hearing is generally a matter of discretion for the trial court. *See Zimmerman v. Witte Transp. Co.,* 259 N.W.2d 260, 262 (Minn.1977).