Keith HENDERSON, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. CX–02–2184.

Supreme Court of Minnesota.

March 4, 2004.

Sara Goldman, Freedom Forum of New York City, New York City, for Appellant.

Michael A. Hatch, Minnesota Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

BLATZ, Chief Justice.

On March 25, 1999, a jury found appellant Keith Henderson guilty of first-degree murder in violation of Minn.Stat. § 609.185(1) (2000), and guilty of a crime committed for the benefit of a gang in violation of Minn.Stat. § 609.229, subd. 2 (2000), in connection with the shooting death of Juwan Gatlin. The district court sentenced Henderson to life in prison on the first-degree murder conviction and imposed a consecutive five-year sentence for his conviction of a crime committed for the benefit of a gang. On January 11, 2001, we affirmed his conviction and sentence. *State v. Henderson,* 620 N.W.2d 688, 706 (Minn.2001). In July of 2002, appellant filed a Motion for Postconviction Relief pursuant to Minn.Stat. § 590.01, subd. 1 (2002) based on ineffective assistance of trial counsel and selective prosecution. The postconviction court denied relief without an evidentiary hearing. Appellant now appeals the decision of the postconviction court. We affirm.

The facts of this case are fully detailed in the direct appeal to this court. *Henderson,* 620 N.W.2d at 693–96. However, to provide context for the issues raised in this appeal, we will briefly summarize the facts relevant to the issues before us. Juwan Gatlin was shot to death on August 7, 1998, in an alley in Minneapolis. Gatlin was a member of the Mickey Cobra gang, a gang to which appellant Keith Henderson also belonged. *Id.* at 693. During the trial, evidence was introduced suggesting that Gatlin was murdered because he provided the police with information that resulted in the arrest and guilty pleas of two other members of the Mickey Cobras for a separate, unsolved murder. *Id.*

At trial, several witnesses, including April Bell, Herbert Williams, Dedra John-

son, and Cherry Bell, testified as to various occurrences or conversations they had with Mickey Cobra members believed to be involved in the murder. *Id.* at 693–95. Bell, herself a Mickey Cobra member, testified in great detail regarding events occurring on the day of the murder. Specifically, she testified that Darryl McKee and Donte Evans—two men alleged to have been with appellant at the time of the murder—were in her bedroom minutes before the murder occurred, retrieving a gun and discussing their plan to kill Gatlin. Bell also testified that she was with McKee, Evans, and appellant immediately after Gatlin was murdered because all three men came back to her house. While there, McKee and Evans changed their clothes, and the men discussed comments made by Gatlin when he was attacked.

Johnson, who was romantically involved with Gatlin, testified that she was with appellant when another man came to her house and told her that Gatlin had been murdered. According to Johnson, appellant responded to the news of Gatlin's death with the statement, "I did it." After seeing the shock on Johnson's face, appellant said he was "playing."

On September 14, 1998, after appellant was charged with the murder of Gatlin but months before the trial began, the parties entered into a stipulation and requested the court to order that neither appellant, "his attorney, or any of the above-referenced agents shall disclose or discuss any discoverable material with anyone else, and specifically not to persons not assigned to represent [appellant] on the above-referenced criminal matter."[1] At the time the stipulation was entered into, it was alleged that Gatlin, a Mickey Cobra, was murdered because he "snitched." Thus, there was a concern that at least two of the witnesses, Bell and Williams, who were also Mickey Cobras, were vulnerable to retribution. The judge issued the order requested.

In addition to the aforementioned witnesses, at trial the state called Paul Givens to testify. Givens testified that while he was in jail with appellant, appellant confessed to the murder and the circumstances surrounding it. Givens had been declared incompetent to stand trial in an unrelated criminal charge against him in the spring of 1998 due to marginal intellectual capacity and dementia from severe head trauma. *See* Minn. R.Crim. P. 20.01 (2002). However, in the fall of 1998— approximately six months prior to his testifying in this case—Givens was declared competent to stand trial.

At trial, appellant's counsel made a motion challenging the timing of the disclosure of Givens as a witness and challenged Givens as an incompetent witness under Minn.Stat. § 595.02 (2002).[2] Appellant's counsel claimed that the state had received information in late October or early November of 1998 from Givens that he had information about Gatlin's murder and would testify against appellant, but that he was not notified of Givens's cooperation until late January or early February of 1999. The trial proceedings commenced March 15, 1999. Counsel argued that the evidence put forth by Givens should have been excluded in part because the defense did not have time to "get him psychologically evaluated." In response to the mo-

---

**1.** The "above-referenced agents" included two assistant Hennepin County attorneys, as well as an assistant Hennepin County public defender.

**2.** The motion on the record only referred to § 595.02 generally. A challenge to persons of unsound mind can be found under Minn.Stat. § 595.02, subd. (f), however, the record is unclear as to whether the motion was brought under this subdivision.

tion by appellant's counsel, the district court asked Givens a series of questions directed to determining Givens's ability to discern truth from falsehood and to detect the possibility of mental illness. Finding Givens competent, the court denied the motion, and Givens was allowed to testify. Appellant was convicted of and sentenced for murder in the first degree and for a crime committed for the benefit of a gang.

On direct appeal, appellant raised five separate issues. We affirmed his convictions, holding that (1) the evidence proffered by appellant that the victim was not afraid of him was not relevant; (2) any error in failing to instruct the jury on accomplice testimony was harmless; (3) appellant did not make a prima facie case of racial discrimination in the state's use of a peremptory strike; (4) the evidence was sufficient to support the convictions; and (5) the sentence of life in addition to a consecutive term of five years was permissible. *Henderson*, 620 N.W.2d at 698–706.

Subsequent to the direct appeal, appellant filed a petition for postconviction relief in July of 2002. Appellant argued that he was prejudiced by ineffective assistance of trial counsel and that he was selectively prosecuted based upon the racially discriminatory impact of Minn.Stat. § 609.229, the statute that penalizes crimes committed for the benefit of a gang. Without conducting a hearing on the petition, the postconviction court noted that the issues raised were known on direct appeal and therefore were barred by our decision in *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). Nonetheless, the court went on to address the substantive claims but denied the petition, noting that all of appellant's claims lacked factual support. Appellant then appealed to this court.

▮ This case presents the court with the issue of whether appellant is entitled to an evidentiary hearing on his postconviction petition and the relief requested. In his petition, appellant reasserts and incorporates the arguments from his postconviction petition. Appellant's specific claims regarding ineffective assistance of trial counsel are two-pronged: (1) his counsel's alleged failure to subject witness Givens to psychological evaluation; and (2) his counsel's alleged failure to challenge the "protective order" issued by the district court.

▮ Postconviction relief may be sought in Minnesota pursuant to Minn. Stat. 590.01, subd. 1. A postconviction courts rulings are reviewed under an abuse of discretion standard. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn.1994). Our inquiry is limited to determin[ing] whether there is sufficient evidence to sustain the postconviction courts findings. *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992). Additionally, when a defendant files for postconviction relief, he bears the burden of proving, by a preponderance of evidence, facts sufficient to warrant a reopening of the case. *Hummel v. State*, 617 N.W.2d 561, 564 (Minn.2000) (citing *Hale v. State*, 566 N.W.2d 923, 926 (Minn. 1997)). In order to meet that burden, a petitioners allegations must be supported by more than mere argumentative assertions that lack factual support. *Id.*

▮ A postconviction proceeding may require an evidentiary hearing. *See* Minn. Stat. 590.04, subd. 1 (2002). However, if the petition, files, and record conclusively show that the petitioner is entitled to no relief, a court need not conduct an evidentiary hearing. *Id.; Hummel*, 617 N.W.2d at 564 (citing *Zenanko v. State*, 587 N.W.2d 642, 644 (Minn.1998); *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn.1990)).

▮ Further, where a petition for postconviction relief otherwise meets the

standards set forth in Minn.Stat. § 590.01 (2002), it may be procedurally barred due to the standard set forth in this court's decision in *Knaffla*. "[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *Knaffla*, 243 N.W.2d at 741. This rule also applies if the petitioner should have known about the claim at the time of direct appeal. *Boitnott v. State*, 640 N.W.2d 626, 630 (Minn.2002) (citing *Black v. State*, 560 N.W.2d 83, 85 (Minn.1997)). The exceptions to this rule are where the claim is so novel that the legal basis was not available on direct appeal, or where the petitioner did not "deliberately and inexcusably" fail to raise the claim on direct appeal and fairness requires its consideration. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001) (citing *Roby v. State*, 531 N.W.2d 482, 484 (Minn.1995)).

■ In this case, appellant sets forth no evidence suggesting why his claims are not procedurally barred. As to appellant's claim of ineffective assistance of trial counsel, we have held that such claims are barred on petition for postconviction relief when such claims are known and not raised at the time of direct appeal, except where the claim requires additional fact-finding by the court. *Ives v. State*, 655 N.W.2d 633, 636 (Minn.2003); *Hale v. State*, 566 N.W.2d 923, 926 (Minn.1997); *Black*, 560 N.W.2d at 85. Appellant bases his ineffective assistance of trial counsel claim on his counsel's failure to have Givens psychologically examined and on his counsel's role in entering into a stipulation with the state urging the district court to issue a protective order. Appellant objects to the stipulation and order because he believes they were a violation of his "due process and equal protection rights."

Appellant's claims of ineffective assistance of trial counsel fail for several reasons. As an initial matter, there is no evidence that the claims were not known at the time of direct appeal, that any additional fact finding is necessary, or that any of the *Knaffla* exceptions apply. Further, if we were to address the merits, the record clearly shows that trial counsel challenged the evidence provided by Givens and Givens's competency on March 17, 1999.

Finally, separate from his ineffective assistance of trial counsel claim, appellant raises an equal protection claim of selective prosecution, based on the alleged racially discriminatory impact of Minn.Stat. § 609.229, the statute penalizing crime committed for the benefit of a gang. This claim was known or should have been known at the time of the direct appeal, and appellant offers no evidence that would support a holding that one of the *Knaffla* exceptions applies to necessitate an evidentiary hearing or postconviction relief.

Accordingly, the postconviction court's denial of relief without an evidentiary hearing is therefore affirmed.