**Brad Alan VOORHEES, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A05–27.**

Supreme Court of Minnesota.

Dec. 8, 2005.

Brad Alan Voorhees, Bayport, MN, Pro Se Appellant.

Mike Hatch, Attorney General, St. Paul, MN, Alan L. Mitchell, St. Louis County Attorney, Mark S. Rubin, Assistant County Attorney, Duluth, MN, for Respondent.

## OPINION

PAGE, Justice.

On July 24, 1997, appellant Brad Alan Voorhees was convicted of first-degree premeditated murder for the shooting death of his wife. Voorhees was sentenced to the mandatory term of life in prison. On direct appeal, we affirmed his conviction. *State v. Voorhees (Voorhees I)*, 596 N.W.2d 241 (Minn.1999). Voorhees subsequently filed a pro se petition for postconviction relief, which was denied by the postconviction court and which, on appeal, we affirmed. *Voorhees v. State (Voorhees II)*, 627 N.W.2d 642 (Minn.2001).[1]

On August 12, 2004, Voorhees filed this, his second, pro se petition for postconviction relief. In this petition, Voorhees made a number of claims, including claims that: (1) newly discovered evidence proves his blood sample was not diluted and was therefore improperly withheld; (2) the prosecutor lied to the grand jury; (3) the trial court should have *sua sponte* given a voluntary intoxication jury instruction; (4) newly discovered FDA studies show that the state's expert witness testified falsely; and (5) he was subject to cruel and unusual punishment, denied equal protection, and discriminated against based on gender. The postconviction court summarily denied the petition, finding that the petition raised the same claims Voorhees raised in his direct appeal and first petition for post-

---

1. The facts underlying Voorhees' convictions are set forth in detail in this court's *Voorhees I* and *II* opinions and will not be repeated here.

conviction relief. In his appeal to this court, Voorhees, in addition to the claims set out above, raises a number of other claims that he does not fully brief or argue.

■■■ When a direct appeal has once been taken by a convicted defendant, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). There are two exceptions to this so-called *Knaffla* rule. A court may consider issues otherwise barred by the *Knaffla* rule if (1) a novel legal issue is presented or (2) the interests of justice require review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *Fox v. State,* 474 N.W.2d 821, 824–25 (Minn.1991). On appeal, a postconviction court's determinations will not be overturned absent an abuse of discretion. *Hodgson v. State,* 540 N.W.2d 515, 517 (Minn.1995). Because we conclude that the postconviction court properly denied Voorhees' petition, we affirm.

■ We begin with Voorhees' claim that newly discovered evidence, in the form of articles discussing the results of recent FDA studies of Prozac, make the state's trial expert's testimony that Prozac is a safe drug false. Assuming, without deciding, that the recent FDA studies constitute newly discovered evidence and that this claim is not procedurally barred, we nonetheless conclude that this claim fails.

Voorhees would have this court hold the state's expert accountable for testifying falsely even though the information that he claims calls the testimony into question did not exist at the time of trial. We decline to do so. Moreover, and more importantly, the studies Voorhees relies on merely discuss, in the context of children, the possibility that the class of drugs that includes Prozac may cause suicidal thinking. While the articles Voorhees references mention Prozac and adults, the studies themselves do not address Prozac and suicidal thinking as it relates to adults. Nor do the studies indicate, categorically, that the drugs do cause suicidal thinking. Indeed, each article specifically states that the link between Prozac and suicidal thinking is not clear. A March 22, 2004, FDA Talk Paper states that "it is not yet clear whether antidepressants contribute to the emergence of suicidal thinking and behavior." *FDA Issues Public Health Advisory on Cautions for Use of Antidepressants in Adults and Children,* FDA Talk Paper, Mar. 22, 2004, http://www.fda.gov/bbs/topics/ANSWERS/2004/ANS01283.html (last visited Nov. 11, 2005). An Associated Press article states that "[i]t isn't clear yet that the drugs actually do lead to suicide." *FDA Seeks Suicide Caution for Ten Antidepressants,* N.Y. Times, Mar. 22, 2004. A January 1, 2005, Minneapolis Star Tribune article states that "the FDA ordered that all antidepressants carry warnings that they 'increase the risk of suicidal thinking and behavior' in *children.*" *Prozac Maker Knew of Harmful Side Effects, Journal Says,* Minneapolis Star Trib., Jan. 1, 2005, at A11 (emphasis added).

In that the studies did not exist at the time of trial, do not address the effects of Prozac on adults with respect to suicidal thinking, and at most support some portions of Voorhees' trial expert's testimony while contradicting some portions of the state's expert's testimony, we conclude that the postconviction court did not abuse its discretion in denying Voorhees' newly discovered evidence claim.

■ We next address Voorhees' blood evidence, grand jury misconduct, and voluntary intoxication claims. In his direct appeal, Voorhees claimed that: (1) the trial

court improperly limited his trial expert's testimony regarding the effects of combining Prozac with alcohol and methamphetamines, his testimony that Prozac caused him to kill his wife, and a cellmate's testimony regarding Voorhees' demeanor while in jail; (2) the trial court erred in instructing the jury on involuntary intoxication; (3) the state presented insufficient evidence of premeditation and insufficient evidence that he did not act in the heat of passion; (4) the state committed misconduct during grand jury proceedings and trial; (5) the district court erred when it did not allow him to substitute counsel; and (6) his counsel gave ineffective assistance. *Voorhees I,* 596 N.W.2d at 245. In his first postconviction petition, Voorhees alleged: (1) violations of due process at trial and on appeal; (2) the trial court should have *sua sponte* instructed the jury on voluntary intoxication; (3) newly discovered evidence proved his blood sample was wrongfully withheld; (4) misconduct on the part of the prosecutor; (5) violation of his right to effective assistance of trial and appellate counsel; and (6) insufficient evidence of premeditation. *Voorhees II,* 627 N.W.2d at 645. Having made claims on direct appeal and in his first postconviction petition relating to his blood sample, misconduct by the state in the grand jury proceedings, and the trial court's failure to *sua sponte* give an instruction on voluntary intoxication, we conclude that Voorhees is procedurally barred from raising related, if not exactly the same, claims here. *Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741.

Finally, with respect to Voorhees' remaining claims, we conclude that each of the claims was either known to him or should have been known to him at the time of his direct appeal and first postconviction petition. Furthermore, none of the claims Voorhees raises present novel legal questions, nor does fairness require that they be reviewed in the interests of justice. Therefore, all of them are procedurally barred. *Id.*

Affirmed.

BLATZ, C.J., took no part in the consideration or decision of this case.