STATE OF MINNESOTA

IN SUPREME COURT

A15-1468

Mahnomen County                                                        Anderson, J.
                                                             Took no part, Chutich, J.
Thomas Lee Fairbanks,

              Appellant,

vs.                                                           Filed: July 20, 2016
                                                         Office of Appellate Courts
State of Minnesota,

              Respondent.

_____

Thomas Lee Fairbanks, Torrington, Wyoming, pro se.

Lori Swanson, Attorney General, John D. Gross, Assistant Attorney General, Saint Paul, Minnesota; and

Darlene Rivera Spalla, Mahnomen County Attorney, Mahnomen, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The postconviction court did not abuse its discretion when it concluded that appellant's causation claim was *Knaffla*-barred.

2.      Appellant's remaining claims are unsupported by substantive facts or argument and are therefore forfeited.

Affirmed.

Considered and decided by the court without oral argument.

1

O P I N I O N

ANDERSON, Justice.

On September 1, 2011, a Polk County jury found appellant Thomas Lee Fairbanks guilty of first-degree murder of a peace officer, Minn. Stat. § 609.185(a)(4) (2014), and nine other felonies associated with the shooting of Mahnomen County Sheriff's Deputy Christopher Dewey. Fairbanks appealed directly to our court, and we affirmed his first-degree murder conviction and all but one of his other felony convictions. *State v. Fairbanks*, 842 N.W.2d 297 (Minn. 2014). On February 17, 2015, Fairbanks filed a pro se petition for postconviction relief, which the postconviction court denied without holding an evidentiary hearing. Fairbanks now appeals the postconviction court's ruling.

I.

The facts relevant to this appeal span the night of February 17 and the early morning hours of February 18, 2009, when the shooting occurred.[1] During a night of drinking with his associate, Daniel Vernier, Fairbanks fired a pistol several times, both inside and outside of his mobile home trailer. Police came to Fairbanks's mobile home twice: once to investigate a report of gunfire and once to investigate a report of drunk driving and/or a crash involving Fairbanks's vehicle. On both occasions, Fairbanks and Vernier hid in the mobile home to avoid the officers, and after the officers departed, the two continued to drink into the early morning hours.

---

[1]     The facts surrounding Fairbanks's murder of Deputy Dewey are set out in detail in our opinion in his direct appeal. *See Fairbanks*, 842 N.W.2d at 300-01.

2

After the officers left for the second time, Fairbanks and Vernier ran out of alcohol. Fairbanks, accompanied by Vernier, decided to ask a neighbor for either alcohol or a ride. As Fairbanks was talking to the neighbor, Deputy Dewey pulled up in his squad car. Deputy Dewey then left the vehicle and began to walk up the driveway toward Vernier and Fairbanks. Vernier walked toward Deputy Dewey; Deputy Dewey ordered Vernier to put his hands in the air. Fairbanks and the neighbor testified that Vernier took a swing at Deputy Dewey, who ducked past Vernier. Fairbanks testified that Deputy Dewey reached for his sidearm while ducking past Vernier, at which point Fairbanks shot Deputy Dewey in the head and abdomen. After a lengthy standoff with police, Vernier and then Fairbanks surrendered.

Deputy Dewey was airlifted to a hospital in Fargo, where he underwent emergency brain and abdominal surgery. During the surgery, the neurosurgeon removed at least two-thirds of the right side of Deputy Dewey's skull. Although Deputy Dewey survived the surgery and the immediate aftermath of the shooting, his condition deteriorated over the ensuing months. In January 2010 a rehabilitative doctor determined that Deputy Dewey was in a "persistent vegetative state."

In July 2010 Deputy Dewey was diagnosed with pneumothorax.[2] According to Deputy Dewey's doctor, the treatment for pneumothorax would require hospitalization, a chest tube, and massive antibiotics. In consultation with family members, Deputy

---

[2] Pneumothorax is a condition in which an air pocket forms inside the chest cavity as a result of a punctured lung. Pneumothorax can place pressure on the lungs and reduce the ability of the lungs to oxygenate the blood.

Dewey's wife decided not to pursue treatment for the pneumothorax and instead placed Deputy Dewey in hospice care. Deputy Dewey died approximately 18 months after the shooting.

The medical examiner concluded that Deputy Dewey's death was a homicide and was caused by complications from the gunshot wounds that Fairbanks inflicted on Deputy Dewey. After a jury trial, Fairbanks was convicted of first-degree murder and nine other felonies. Fairbanks appealed directly to our court, arguing, among other things, that his murder conviction violated the common law year-and-a-day rule.[3] We upheld Fairbanks's first-degree-murder conviction and all but one of his other felony convictions, concluding that "the year-and-a-day rule does not apply to the Minnesota law of homicide." *Fairbanks*, 842 N.W.2d at 305, 308.

On February 17, 2015, Fairbanks filed a pro se petition for postconviction relief wherein he argued, in addition to asserting other claims, that he did not actually cause the death of Deputy Dewey. The postconviction court denied Fairbanks's petition without an evidentiary hearing, finding that his causation claim and the majority of his other claims were barred by Minn. Stat. § 590.01, subd. 1 (2014), and our decision in *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). Fairbanks's remaining claims were deemed meritless. This appeal followed.

---

[3]     "The year-and-a-day rule is an ancient English common law doctrine providing that a defendant may not be convicted of murder unless the victim dies from the defendant's act within a year and a day of the act." *Fairbanks*, 842 N.W.2d at 304 (citing *Rogers v. Tennessee*, 532 U.S. 451, 462-67 (2001)).

II.

"A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity." *Hummel v. State*, 617 N.W.2d 561, 563 (Minn. 2000). We review the denial of a postconviction petition for an abuse of the postconviction court's discretion. *Perry v. State*, 595 N.W.2d 197, 200 (Minn. 1999). "We review findings of fact for clear error and questions of law de novo." *Erickson v. State*, 842 N.W.2d 314, 318 (Minn. 2014). A postconviction petitioner is entitled to a hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief . . . ." Minn. Stat. § 590.04, subd. 1 (2014); *Zenanko v. State*, 587 N.W.2d 642, 644 (Minn. 1998). A hearing is not required, however, when the petition is procedurally barred by the *Knaffla* rule. *See Zenanko*, 587 N.W.2d at 644 (stating that claims raised on direct appeal or known but not raised on direct appeal "will not be considered . . . for postconviction relief").

Fairbanks's petition focuses almost exclusively on his argument that he did not cause the death of Deputy Dewey, and thus his first-degree-murder conviction must be overturned.[4] Specifically, Fairbanks argues that the pneumothorax in July 2010, the decision by Deputy Dewey's family to refuse further medical treatment, or a combination of the two caused Deputy Dewey's death. The postconviction court concluded that Fairbanks's claim was barred by Minn. Stat. § 590.01, subd. 1, which states: "A petition

---

[4]    Fairbanks also argues that the district court prevented his counsel from arguing the issue of causation at the trial. The record does not support this assertion. To the contrary, the district court permitted Fairbanks's counsel to generate a record regarding the causation issue.

5

for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." The postconviction court also found that Fairbanks's claims were barred by our decision in *Knaffla*. *See Sontoya v. State*, 829 N.W.2d 602, 604 (Minn. 2013) (stating that "[c]laims that were raised on direct appeal, or were known or should have been known but were not raised on direct appeal, are" *Knaffla*-barred).

Here, the causation issue was both known and actively litigated before the district court and, consequently, it was known or should have been known on direct appeal. *See Ashby v. State*, 752 N.W.2d 76, 79 (Minn. 2008) (concluding that a petitioner knew or should have known about claims concerning "conduct occurring either before or during trial"). Fairbanks's counsel objected to the State's proposed causation instruction during the pretrial phase and initially argued that Deputy Dewey's family committed "euthanasia" by refusing further medical care.

Although arguments about causation were not made at trial, their absence was a result of an agreement between the prosecution and the defense. Fairbanks's counsel agreed not to argue that Deputy Dewey's family committed euthanasia and, in return, the prosecutor agreed not to question the State's medical witnesses concerning the definition of euthanasia and whether euthanasia caused the death of Deputy Dewey. This agreement appears to have been the product of a calculated decision on the part of Fairbanks's counsel to acknowledge that Fairbanks shot Deputy Dewey, show that Fairbanks was taking responsibility for his actions, and then present the defense of intoxication. Fairbanks explicitly agreed to this strategy on the record before the trial

6

began and specifically acknowledged that he was aware of the issues that had been litigated during the pretrial phase. On direct appeal, Fairbanks did not raise the causation issue, but he did raise a related claim by arguing that the common law year-and-a-day rule precluded his murder conviction.

The litigation in the district court and on appeal demonstrates that Fairbanks and his attorney were aware of the causation issue and chose not to raise it, or chose to address it obliquely, for strategic reasons. Consequently, Fairbanks's causation claim is clearly barred by Minn. Stat. § 590.01, subd. 1, and *Knaffla* because, although Fairbanks could have raised the claim on direct appeal, he failed to do so. *See Zenanko*, 587 N.W.2d at 644 ("Once a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.' " (quoting *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741)).

"There are two exceptions to the *Knaffla* rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review." *Taylor v. State*, 691 N.W.2d 78, 79 (Minn. 2005). We have not yet decided whether the two exceptions to *Knaffla* apply to the procedural bar in section 590.01, subdivision 1. *See Hooper v. State*, 838 N.W.2d 775, 787 n.2 (Minn. 2013) (collecting cases that have declined to decide whether the exceptions to the *Knaffla* bar survived the passage of Minn. Stat. § 590.01, subd. 1, either because the claims were clearly barred under *Knaffla* or because the State did not argue that the exceptions were superseded by Minn. Stat. § 590.01, subd. 1).

It is unnecessary to resolve this issue here because Fairbanks does not argue that either of the exceptions to the *Knaffla* rule apply here. As a result, Fairbanks has

forfeited any argument that the exceptions to the *Knaffla* rule permit his causation claim to proceed. *See Greer v. State*, 836 N.W.2d 520, 522 n.3 (Minn. 2013) (holding that an argument regarding the newly-discovered-evidence exception to the statute of limitations had been forfeited because the petitioner did not raise it in his brief). Because Fairbanks's causation claim is barred by section 590.01, subdivision 1, and *Knaffla*, the postconviction court did not abuse its discretion when it denied Fairbanks's claim without holding a hearing. *See Zenanko*, 587 N.W.2d at 644.

## III.

Fairbanks raises a number of other claims at the end of his petition and at the end of his brief to our court.[5] None of these claims are supported by any facts, citations to the

---

[5]     Fairbanks's brief to this court states:

> That petitioner also alleges such other grounds relating to the Constitution and laws of the United States or the State of Minnesota which appear from the records and proceedings herein, and such grounds that the Court may decide to have litigated even though not specifically raised by the petitioner, such as his right not to have evidence illegally seized; his right not to have statements obtained from him in violation of his right to counsel or his right not to incriminate himself or other legal right; his right to be charged by proper complaint, information or indictment; his right to be confronted by his accusers; his right not to be placed twice in jeopardy; his right to due process of law including discovery; his right to disclosure of favorable evidence; his right to counsel and to the effective aid and assistance of counsel; his right not to be induced to enter a plea of guilty by fraud, coercion, or misrepresentation; his right not to be induced to enter a plea of guilty by misunderstanding or lack of knowledge of his right to exclude illegally obtained evidence or to preliminary proceedings; his right to have his plea of guilty properly accepted by the trial court, and his right to be sentenced by a court of competent jurisdiction and to a fair sentence.

(Footnote continued on next page.)

8

record, or substantive argument. We note that many of these claims are not obviously applicable to Fairbanks's case,[6] while a number of other claims appear to be barred by section 590.01, subdivision 1, or *Knaffla*. But Fairbanks's failure to provide us with any additional factual information or argumentation makes it impossible for us to fully analyze these claims. Because a "petitioner's allegations must [present] 'more than argumentative assertions without factual support,' " *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995) (quoting *Beltowski v. State*, 289 Minn. 215, 217, 183 N.W.2d 563, 564 (1971)), we decline to consider Fairbanks's additional claims. Therefore, the postconviction court did not abuse its discretion when it denied Fairbanks's petition without a hearing.

Affirmed.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

(Footnote continued from previous page.)
Fairbanks provides no further facts, argument, or analysis to support any of these claims, apparently relying on us to examine the record independently.

[6] For instance, Fairbanks makes several claims regarding the entry of a guilty plea, but Fairbanks never entered or attempted to enter a plea of guilty in district court.

9