McKEIG, Justice.
*310 Appellant Tyree Leland Jackson was convicted of first-degree premeditated murder under an aiding-and-abetting theory of liability. The district court imposed a sentence of life without the possibility of release. On direct appeal, we affirmed Jackson's conviction. In 2018, Jackson filed a postconviction petition, alleging claims of ineffective assistance of counsel. In his petition, Jackson requested an evidentiary hearing on his claims for ineffective assistance of trial and appellate counsel and mentioned a motion for testing conducted under subdivision 1a of the postconviction statute, Minn. Stat. § 590.01 (2018). The postconviction court summarily denied Jackson's claims of ineffective assistance of counsel without holding an evidentiary hearing because his claims were barred by the 2-year statute of limitations, Minn. Stat. § 590.01, subd. 4 (2018). The postconviction court's order did not acknowledge the reference to "testing conducted under subdivision 1a" in Jackson's request for relief. Because Jackson's claims are barred by the 2-year statute of limitations and his reference to testing does not satisfy the requirements of subdivision 1a, we affirm.
FACTS
On May 16, 2003, Thomas Olson attended a party at a south Minneapolis home with three of his friends. When a fight broke out, Olson and his friends ran to their cars. As Olson was driving away, shots were fired at his car and one of the bullets fatally struck Olson in the head. Several eyewitnesses identified one of the shooters as Jackson, a known associate of the Bloods gang. The shots were fired from two different guns, one a Colt .32 semi-automatic pistol and the other either a .38 revolver, a .357 revolver, or a 9-millimeter semi-automatic.[1]
A Hennepin County grand jury indicted Jackson on several counts, including first-degree premeditated murder, Minn. Stat. § 609.185(a)(1) (2018), and crime committed for the benefit of a gang, Minn. Stat. § 609.229, subd. 2 (2018), where the underlying crime was second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1) (2018). Both counts alleged aiding-and-abetting liability under Minn. Stat. § 609.05, subd. 1 (2018).
Pursuant to a plea agreement, Jackson pleaded guilty to the crime-committed-for-the-benefit-of-a-gang offense. In exchange for his plea, the State agreed to dismiss the remaining charges at sentencing. But before sentencing, Jackson filed a motion to withdraw his guilty plea, claiming that he was not guilty of the crime and that he felt enormous pressure to plead guilty to avoid the potential sentence of life without the possibility of release. The district court granted the motion, and the case proceeded to trial.
The jury found Jackson guilty of first-degree premeditated murder under an aiding-and-abetting theory of liability, and the district court sentenced Jackson to life imprisonment without the possibility of release. Jackson filed a direct appeal that raised five issues, including a claim of ineffective assistance of trial counsel. We affirmed Jackson's conviction in June 2006.
*311 State v. Jackson , 714 N.W.2d 681, 698 (Minn. 2006).
More than 11 years later, Jackson filed a petition for postconviction relief asserting five claims of ineffective assistance of trial counsel.[2] The first claim alleged that trial counsel was ineffective when he told Jackson that he "could win the case," thereby convincing Jackson to withdraw his guilty plea. In support of his claim, Jackson cited Lafler v. Cooper , 566 U.S. 156, 163, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) (explaining that although "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance," the parties conceded that trial counsel's performance was deficient when he advised the defendant "to reject the plea offer on the grounds he could not be convicted at trial"). The second claim alleged that trial counsel failed to call certain unnamed witnesses at trial. The third claim alleged that trial counsel failed to obtain an independent evaluation of the ballistic evidence or retain a firearms expert. The fourth claim alleged that trial counsel failed to object to the introduction of a firearm that was not proven to be connected to the crime. The fifth claim alleged that trial counsel failed to request a jury instruction explaining that, pursuant to Minn. Stat. § 611.02 (2018), "when an offense has been proved against the defendant, and there exists a reasonable doubt as to which of two or more degrees the defendant is guilty, the defendant shall be convicted only of the lowest." Jackson also asserted that his appellate counsel was ineffective by not raising on direct appeal the five claims of ineffective assistance of trial counsel specified in his postconviction petition. In describing his request for relief, Jackson wrote, "Petitioner request[s] an evidentiary hearing for the court to receive evidence on ineffective assistance of trial and appellate counsel claims and motion [with] results from testing conducted under subdivision 1a" of the postconviction statute, Minn. Stat. § 590.01.
The postconviction court denied Jackson's petition for postconviction relief without holding an evidentiary hearing. According to the postconviction court, the petition and the files and records of the proceedings conclusively showed that Jackson was entitled to no relief because his claims were barred by the 2-year statute of limitations, Minn. Stat. § 590.01, subd. 4(a).[3] Although Jackson's petition did not expressly raise any of the statute of limitation exceptions in Minn. Stat. § 590.01, subd. 4(b), the postconviction court liberally construed the petition as raising the exception in subdivision 4(b)(3), which reads: "the petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States Supreme Court or a Minnesota appellate court and the petitioner establishes that this interpretation is retroactively applicable to the petitioner's case." After reviewing the United States Supreme Court's decision in Lafler , the postconviction court concluded that, even if Lafler announced a new interpretation of the law that applied retroactively, the subdivision 4(b)(3) exception did not allow it to *312 consider Jackson's untimely petition for postconviction relief because Lafler was decided more than 2 years before Jackson filed his petition.[4] See Minn. Stat. § 590.01, subd. 4(c) ("Any petition invoking an exception provided in paragraph (b) must be filed within two years of the date the claim arises."). The postconviction court's order did not acknowledge the reference to "testing conducted under subdivision 1a" in Jackson's request for relief. This appeal follows.
ANALYSIS
On appeal, Jackson argues the postconviction court abused its discretion when it summarily denied his claims of ineffective assistance of counsel without holding an evidentiary hearing. Jackson also argues that a remand is required because the postconviction court failed to acknowledge, much less address, his request that testing be conducted under Minn. Stat. § 590.01, subd. 1a. We consider each argument in turn.
I.
We review the summary denial of postconviction relief for an abuse of discretion. Andersen v. State , 913 N.W.2d 417, 422 (Minn. 2018). The postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record. Brown v. State , 895 N.W.2d 612, 617 (Minn. 2017). "If, taking the facts alleged in the light most favorable to the petitioner, the 'petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief,' the postconviction court may dismiss the petition without an evidentiary hearing." Fox v. State , 913 N.W.2d 429, 433 (Minn. 2018) (quoting Minn. Stat. § 590.04, subd. 1 (2018) ). Accordingly, the postconviction court "may summarily deny a claim that is untimely under the postconviction statute of limitations." Colbert v. State , 870 N.W.2d 616, 622 (Minn. 2015).
A petition is untimely if it is filed more than 2 years after "the entry of judgment of conviction or sentence if no direct appeal is filed" or "an appellate court's disposition of petitioner's direct appeal," whichever is later. Minn. Stat. § 590.01, subd. 4(a). But the postconviction court may consider a petition when the petitioner satisfies one of the five statutory exceptions to this 2-year statute of limitations. Id. , subd. 4(b). These exceptions must be invoked within 2 years of the date the claim arises. Id. , subd. 4(c). In determining whether a petition for postconviction relief invokes an exception to the statute of limitations, the postconviction court must liberally construe the petition. Rickert v. State , 795 N.W.2d 236, 241 (Minn. 2011) ; see also Minn. Stat. § 590.03 (2018) ("The court shall liberally construe the petition and any amendments thereto and shall look to the substance thereof and waive any irregularities or defects in form.").
Here, Jackson's petition for postconviction relief was filed in 2018, which is more than 11 years after we decided his direct appeal. Because the petition was filed more than 2 years after the disposition of Jackson's direct appeal, the postconviction court concluded that it was barred by the postconviction statute of limitations, Minn. Stat. § 590.01, subd. 4(a). In considering whether Jackson's untimely petition invoked any of the exceptions to the statute of limitations, the postconviction court liberally construed the petition in accordance with Rickert *313 and section 590.03. But even under a liberal construction of the untimely petition, the postconviction court concluded, the exception in subdivision 4(b)(3) did not allow it to consider Jackson's petition because Lafler was decided more than 2 years before he filed his petition.
The postconviction court's analysis does not reflect an erroneous view of the law, nor is it against logic and the facts in the record. Instead, it reflects a well-reasoned application of existing law. We therefore conclude that the postconviction court did not abuse its discretion when it summarily denied Jackson's claims of ineffective assistance of counsel without holding an evidentiary hearing.
II.
We next consider Jackson's argument that a remand is required because the postconviction court failed to acknowledge his request for testing conducted under Minn. Stat. § 590.01, subd. 1a. Even if we assume that Jackson's passing reference to "testing conducted under subdivision 1a" was sufficient to put the postconviction court on notice that Jackson was making a motion for fingerprint or forensic DNA testing under Minn. Stat. § 590.01, subd. 1a, we conclude that a remand is not required because Jackson's postconviction petition failed to allege facts that would satisfy the requirements of subdivision 1a.
Under subdivision 1a, a person convicted of a crime may bring a motion for fingerprint or forensic DNA testing to demonstrate the person's "actual innocence" if the evidence to be tested: (1) was "secured in relation to the trial which resulted in the conviction;" and (2) "was not subject to the testing because either the technology for the testing was not available at the time of the trial or the testing was not available as evidence at the time of the trial." Id. , subd. 1a(a). A person who makes a motion under subdivision 1a "must present a prima facie case that: (1) identity was an issue in the trial; and (2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect." Id. , subd. 1a(b). Once a prima facie case is established, the court must order testing if "the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence" and "the testing requested employs a scientific method generally accepted within the relevant scientific community." Id. , subd. 1a(c). The results of such scientific testing may be used to support a subsequent postconviction petition. Id. , subd. 1(2).
Here, Jackson simply wrote, "Petitioner request[s] an evidentiary hearing for the court to receive evidence on ineffective assistance of trial and appellate counsel claims and motion [with] results from testing conducted under subdivision 1a." Even when liberally construed, this sentence does not allege facts that would constitute a prima facie case under subdivision 1a. Among other things, it does not identify the items that need to be tested for fingerprints or DNA, much less allege that the unspecified items were "not subject to the testing because either the technology for the testing was not available at the time of the trial or the testing was not available as evidence at the time of the trial." Id. , subd. 1a(a)(2). In addition, Jackson's petition does not allege that the unspecified items have "been subject to a chain of custody sufficient to establish that [they have] not been substituted, tampered with, replaced, or altered in any material aspect." Id. , subd. 1a(b)(2). Finally, Jackson's petition does not articulate how fingerprint or DNA testing of these items is "materially *314 relevant to [Jackson's] assertion of actual innocence." Id. , subd. 1a(c)(2).
Based on this record, we conclude that there is no need for a remand for the postconviction court to expressly consider Jackson's passing reference to "testing conducted under subdivision 1a" because there is no possibility that this reference satisfies the requirements of subdivision 1a.[5] Cf. State v. Alexander , 290 N.W.2d 745, 749 (Minn. 1980) (stating that "there is no need for a remand on this issue in this case because there is no possibility that vindictiveness was involved in the decision to amend the complaint").
CONCLUSION
For the foregoing reasons, we affirm the postconviction court's summary denial of postconviction relief.
Affirmed.

A more detailed description of the circumstances surrounding the shooting is set forth in our decision in Jackson's direct appeal. State v. Jackson , 714 N.W.2d 681, 687-89 (Minn. 2006).

Jackson filed a pro se postconviction petition on February 20, 2018, and filed an amended postconviction petition on May 8, 2018. With the exception of the first claim of ineffective assistance of trial counsel, all the claims were re-stated in the amended petition. Because the amendment is immaterial to the issues raised on appeal, we simply use the word "petition" when referring to the petition and its subsequent amendment.

In the alternative, the postconviction court concluded, Jackson's claims were both procedurally barred under State v. Knaffla , 309 Minn. 246, 243 N.W.2d 737, 741 (1976), and without substantive merit.

The Supreme Court issued its decision in Lafler in March 2012, and Jackson filed his petition for postconviction relief nearly 6 years later, in February 2018.

We acknowledge that the distinction between a motion for fingerprint or forensic testing under Minn. Stat. § 590.01, subd. 1a, and a petition for postconviction relief filed under Minn. Stat. § 590.01, subd. 1, might not be fully apparent. In our view, the best practice for a defendant who is requesting both testing and postconviction relief would be to file separate documents for each of these unique requests. Such a practice will not only reduce the risk that a motion for testing might be overlooked, it will also help the defendant focus on the specific requirements of subdivision 1a. Under the unique facts of this case, we conclude that Jackson's failed attempt to move for fingerprint or forensic testing does not prevent an additional attempt at such a motion. To be clear, this special allowance neither expressly, nor implicitly, addresses the issue of whether the statute of limitations or the Knaffla bar applies to motions for testing filed under Minn. Stat. § 590.01, subd. 1a.