Charles Ray BARNES, Petitioner,

v.

STATE of Minnesota, Respondent,

and

Charles Ray Barnes, Petitioner,

v.

State of Minnesota, Respondent.

Nos. A07–2090, A08–1594.

Supreme Court of Minnesota.

July 16, 2009.

Michael C. Davis, St. Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, St. Paul, Minnesota; and James C. Backstrom, Dakota County Attorney, Debra E. Schmidt, Assistant Dakota County Attorney, Hastings, Minnesota, for respondent.

## OPINION

ANDERSON, PAUL H., Justice.

On February 9, 2005, petitioner Charles Ray Barnes was convicted of first-degree domestic abuse murder under Minn.Stat. § 609.185(a)(6) (2008) and sentenced to life in prison. After his conviction, Barnes filed a direct appeal with the assistance of counsel. Barnes also filed a pro se supplemental brief as part of his direct appeal. We affirmed Barnes' conviction, rejecting each ground for appeal, with the exception of one pro se claim of ineffective assistance of counsel. We did not reach the merits of the pro se ineffective assistance of counsel claim because additional facts were needed to review the issue.

Following his direct appeal, Barnes filed a petition for postconviction relief. The Office of the Public Defender declined to represent Barnes on the postconviction petition. Following the evidentiary hearing, the postconviction court denied Barnes' petition for relief. Barnes filed a motion for reconsideration, arguing, among other things, that he had a constitutional right to the assistance of counsel on his postconviction claim. The court denied the motion. Barnes appeals from the court's decisions and focuses on the question of whether he is entitled to the assistance of counsel on his postconviction claim. We affirm.

On July 13, 2004, petitioner Charles Ray Barnes called 911 to report that he had found his ex-wife, Erin Rooney, unconscious and not breathing. *State v. Barnes,* 713 N.W.2d 325, 328 (Minn.2006).[1] Barnes told the 911 operator that he believed Rooney had overdosed on drugs or alcohol. *Id.* The operator instructed Barnes to perform chest compressions while the police were in route to his home. *Id.* When the police arrived they administered chest compressions (CPR), but Rooney was declared dead by the paramedics who arrived several minutes after the police. *Id.*

Rooney's death was initially treated as an overdose death investigation until the medical examiner, Dr. Lindsey Thomas, performed the autopsy and documented certain injuries. *Barnes,* 713 N.W.2d at 328–29. The injuries included: (1) several bruises and abrasions; (2) defensive injuries on Rooney's hands; (3) hemorrhaging around her neck; (4) a broken hyoid bone; (5) petechiae, or ruptured blood vessels, in her eyes; (6) swelling and congestion in her face; (7) injuries to her lips and tongue; and (8) a contusion under her chin. *Id.* at 328. The neck injuries, specifically the broken hyoid bone and hemorrhage in Rooney's neck, suggested manual strangulation. After receiving this information from the medical examiner, the police began to treat their investigation of Rooney's death as a homicide. *Id.* at 329.

Barnes was subsequently charged and indicted in connection with Rooney's death. *Id.* One of the major issues at Barnes' trial was the interpretation of the medical evidence used to determine the cause of Rooney's death. The State contended that Barnes had manually strangled Rooney during a domestic assault. Barnes asserted that Rooney had died of a drug overdose. At trial, the State introduced medical evidence from Dr. Thomas. Dr. Thomas testified as to her findings, especially the injuries she observed during the autopsy.

During cross-examination, Barnes' counsel raised possible alternative reasons for the injuries, focusing on Rooney's intoxicated state, Barnes' various resuscitative efforts, and the administration of CPR by the police. Dr. Thomas admitted that un-

---

1. A full account of the facts of this case is in our prior opinion. *See State v. Barnes,* 713 N.W.2d 325, 328 (Minn.2006).

til she came upon the broken hyoid bone she was "able to kind of rationalize each injury" as non-homicidal in nature. Counsel raised the possibility that the broken hyoid bone could have occurred as a result of Rooney's weight, either during a fall or as a result of the handling of Rooney's body postmortem. To explain the hemorrhaging, counsel focused on the possibility that the injuries were the result of an "artifact." Specifically, counsel suggested the hemorrhaging could have been caused by "the Prinsloo Gordon artifact," which refers to postmortem bleeding in the neck, possibly caused by an autopsy.

The State also presented the testimony of forensic pathologist Dr. Dean Hawley, who reviewed Dr. Thomas' conclusions but did not personally conduct an examination of Rooney's body. Dr. Hawley provided background information on strangulation and its physical effects. Dr. Hawley then explained his conclusion that Rooney's injuries suggested that she had died of strangulation. The State asked Dr. Hawley about the Prinsloo Gordon artifact. In discussing the artifact, Dr. Hawley expressed an opinion that in modern times this artifact arises primarily in decomposed bodies. Dr. Hawley also differentiated between the autopsy pictures of Rooney and pictures of the artifact in a treatise by suggesting that the pictures of the artifact in the treatise were of bodies that were in a decomposed state. During the cross-examination of Dr. Hawley, defense counsel dealt thoroughly with most of Dr. Hawley's testimony. But counsel did not cross examine Dr. Hawley on the issue of whether the Prinsloo Gordon artifact occurs in corpses that were not decomposed.

Because of the importance of the medical testimony, defense counsel had sought and had been granted funds to hire medical experts. *Barnes*, 713 N.W.2d at 329. The defense listed one medical expert, Dr.

Janice Ophoven, as a possible rebuttal witness. But when the defense attempted to call Dr. Ophoven she was unavailable. Defense moved for either a one-week continuance or mistrial. Defense counsel argued that an expert was necessary because Dr. Hawley had testified erroneously in two major respects.

First, Dr. Hawley had testified that the Prinsloo Gordon artifact applied only to decomposing bodies, a statement which the defense counsel said was rebutted by both Dr. Ophoven and medical treatises. Second, defense counsel argued that Dr. Hawley had committed a discovery violation because he testified that the hyoid bone was broken off and that a ligament was torn, but counsel claimed this information had not been included in Dr. Hawley's expert report. Counsel explained that the purpose of the continuance was to retain an expert pathologist to testify to the "general principles of anatomy" at issue. Counsel clarified that she had "no intention of asking an expert to testify about cause of death in this case...." Although the district court expressed that it was "astonished that Dr. Ophoven has not made herself available," the court denied the motion for continuance or mistrial.

Barnes was found guilty of Rooney's death, and the district court entered a conviction for first-degree domestic abuse murder under Minn.Stat. § 609.185(a)(6) and sentenced Barnes to life in prison. *Barnes*, 713 N.W.2d at 329. After his conviction, Barnes filed a direct appeal with the assistance of counsel. *See id.* Barnes did not request a postconviction evidentiary hearing before his direct appeal to develop his alleged ineffective assistance of trial counsel claims. Rather, Barnes filed a pro se supplemental brief, in which he raised several ineffective assistance of trial counsel claims based on the trial record. *See id.* at 335. In a decision

published on April 27, 2006, we affirmed Barnes' conviction, rejecting each ground for appeal, with exception of one pro se claim of ineffective of assistance of counsel. *Id.*

With respect to the pro se ineffective assistance of counsel claim, we said that "[t]o the extent that Barnes' ineffective assistance of counsel claim relates to the failure to present any defense medical expert testimony, it cannot be determined from the trial record." *Id.* As a result, we did not reach the merits of the claim. We explained that our decision should not be construed as limiting Barnes' right "to attempt to develop and present such claim in a postconviction petition." *Id.* Although we could not determine whether it was ineffective assistance of counsel to fail to present any defense medical expert testimony, we could and did conclude, based on the record, that trial counsel's performance in questioning the state's medical experts did "not rise to the level of ineffective assistance...." *Id.* at 336. Therefore, only the narrow question of whether it was ineffective assistance of counsel for Barnes' counsel to fail to present medical testimony on behalf of the defense was left for a possible postconviction petition.

Following the decision, Barnes submitted a pro se petition for postconviction relief. Barnes sought the assistance of the State Public Defender's Office, but the office declined to represent Barnes in the proceeding based on its prior representation during the direct appeal. As a result, Barnes appeared pro se at the postconviction evidentiary hearing. Suzanne Flinsch and Mary Wingfield, Barnes' trial attorneys, testified at the hearing.

Flinsch had been the primary attorney charged with developing expert testimony. Flinsch testified that the decision not to call Dr. Ophoven "definitely was not a trial tactic." Rather, Dr. Ophoven had agreed to testify if some unexpected testimony came up. But when defense counsel tried to contact Dr. Ophoven after Dr. Hawley's testimony, counsel was unable to reach her for the remainder of the trial. Flinsch said Dr. Ophoven never explained why she was suddenly unavailable, but Flinsch suspected that because Dr. Ophoven frequently testified for the State in cases involving children, she was under pressure not to testify on behalf of a defendant.

Flinsch said she "felt ... extremely remiss" not to have Dr. Ophoven under a written retainer agreement before trial began. Flinsch admitted that she never intended to call a medical expert to testify as to cause of death because she was unable to find an expert who would rule out manual strangulation as a possible cause of death. But Flinsch testified that she "felt we needed a medical expert" to rebut Dr. Hawley's testimony that the Prinsloo Gordon artifact occurred only in decomposing bodies.

Wingfield also testified at the evidentiary hearing. Wingfield explained that she coordinated the logistics with Dr. Ophoven. Wingfield explained that during defense counsels' last conference with Dr. Ophoven, Dr. Orphoven had said she would be available to sit behind counsel table to assist with questions that might arise. At some point, Dr. Ophoven's assistant told counsel that Dr. Ophoven would not attend, but would be available by phone. Then, when counsel tried to contact Dr. Ophoven during the trial, the assistant reported that Dr. Ophoven was out of town.

The postconviction court denied Barnes' petition for postconviction relief. The court concluded that the "failure to call a medical expert witness was not due to ineffective assistance of counsel." Rather, the court said that "despite the considerable efforts of defense counsel, including the expenditure of $9500 in court-approved

funds for consultation with various medical experts, no expert witness was able or willing to testify to a different cause of death." The court held that Barnes had "failed to establish by a preponderance of the evidence, that counsels' performance fell below an objective standard of reasonableness."

Barnes, assisted by counsel, filed an appeal to our court. Barnes then filed a motion to stay the appeal, requesting more time to move either for reconsideration of the postconviction court's denial of his first petition for postconviction relief, or for a second petition with the assistance of counsel. We granted the motion. Barnes then filed with the postconviction court a Motion for Relief from Order Denying Post–Conviction Relief and For a New Hearing. In his motion for relief, Barnes argued that under *Deegan* he was entitled to the assistance of counsel during the postconviction hearing because this court had not resolved the ineffective assistance of trial counsel claim raised during the direct appeal. After receiving briefs from both parties and the State Public Defender's Office as amicus, the postconviction court denied Barnes' motion.

After the postconviction court denied the motion for reconsideration, Barnes filed a notice of appeal. We vacated the previous stay and consolidated the two appeals. Barnes raises the issue of whether our holding in *Deegan v. State*, 711 N.W.2d 89 (Minn.2006), entitles Barnes to representation during his postconviction proceeding.[2]

■ Barnes argues that he has a right to counsel during his postconviction hearing. Barnes' argument is based on the Minnesota Constitution and the rationale we articulated in *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976), and *Deegan*, 711 N.W.2d 89. He asserts that the Minnesota Constitution and our case law guarantee a criminal defendant the right to the assistance of counsel during first review by postconviction proceedings. *See Deegan*, 711 N.W.2d at 98. Barnes argues that because our court was unable to resolve his ineffective assistance of counsel claim on direct appeal, that claim has not had the one meaningful review guaranteed by *Deegan*. We conclude that Barnes' case is distinguishable from *Deegan* and Barnes does not have a right to counsel on his postconviction claim.

■ Under Minnesota law, a postconviction claim is brought under Minnesota Statutes chapter 590 (2008). Section 590.01 allows postconviction claims in two circumstances: (1) when federal or state constitutional issues or violations of law are raised, or (2) upon acquisition of scientific evidence that establishes innocence and was not available at trial. Relief is predicated on compliance with the procedural requirements set forth in chapter 590. *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. But when "direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *Id.*

---

2. Barnes raised two other issues in his notices of appeal. Barnes appealed the postconviction court decision to deny his petition for postconviction relief and argued that evidence of a pattern of past abuse had been improperly admitted during his trial. However, only the issue pertaining to Barnes' right to postconviction counsel was briefed by the parties. It is a well-established rule that any claims not argued by the parties are deemed waived unless prejudicial errors are obvious from the record. *Louden v. Louden*, 221 Minn. 338, 339, 22 N.W.2d 164, 166 (1946); *see also State v. Hurd*, 763 N.W.2d 17, 32–33 (Minn. 2009); *Brocks v. State*, 753 N.W.2d 672, 675 n. 3 (Minn.2008). We find no obvious prejudicial error and hold that Barnes has waived these claims.

█ Under *Knaffla* a postconviction claim is not barred if: (1) "the claim 'is so novel that the legal basis was not available on direct appeal,'" and (2) "the petitioner did not 'deliberately and inexcusably'" fail to raise the claim on direct appeal and "'fairness requires its consideration.'" *Torres v. State*, 688 N.W.2d 569, 572 (Minn.2004) (quoting *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001)). Further, a claim of ineffective assistance of trial counsel "is not barred by *Knaffla* if it cannot be determined from the district court record and requires additional evidence." *Id.* (citing *Robinson v. State*, 567 N.W.2d 491, 494–95 (Minn.1997)). In Barnes' direct appeal, we determined that additional facts were needed to determine if the failure to present testimony from a medical expert was ineffective assistance of trial counsel, and so we determined that Barnes' claim was better suited to a postconviction proceeding. *Barnes*, 713 N.W.2d at 335.

Under Minn.Stat. § 590.05 (2008) it is permissive, but not mandatory, that the state public defender represent an indigent defendant "pursuing a postconviction remedy" provided that the defendant has had a direct appeal. Barnes argues, however, that because of the procedural posture of his case, he is constitutionally entitled to postconviction counsel. Given that Barnes' ineffective assistance of counsel claim was brought pro se and could not be reviewed on direct appeal, Barnes argues the claim has not been given a "meaningful review."

Barnes' argument largely derives from our decision in *Deegan*, 711 N.W.2d 89. In *Deegan*, we held that Article I, section 6 of the Minnesota Constitution guaranteed a criminal defendant "one review of a criminal conviction" with the assistance of counsel, "whether by direct appeal or a first review by postconviction proceeding." *Id.* at 98. The precise issue addressed in *Deegan* was whether Minn.Stat. § 590.05 violated the United States or Minnesota Constitutions because the statute,

> provides that a petitioner who pleaded guilty, received no greater than the presumptive sentence, and did not pursue a direct appeal is not entitled to representation by the state public defender in a postconviction petition if the state public defender reviews the case and determines that there is no basis to appeal the conviction or sentence.

*Id.* at 91. We ultimately concluded that section 590.05 violated the Minnesota Constitution. *Id.* at 98. In reaching the result in *Deegan*, we held that under the Minnesota Constitution "a defendant's access to the other protections afforded in criminal proceedings cannot be meaningful without the assistance of counsel." *Id.*

Barnes argues that a postconviction ineffective assistance of counsel claim is the type of proceeding that is meaningless absent the assistance of counsel. But the emphasis in *Deegan* is on the right to assistance of counsel for one meaningful review of a criminal conviction, not a right to the assistance of counsel on each particular claim brought. The Minnesota Constitution guarantees the right to counsel for one review of a criminal conviction, "whether by direct appeal or a first review by postconviction proceeding." *Deegan*, 711 N.W.2d at 98. Subsequent case law reiterates that a defendant who has been represented by counsel on direct appeal, has no right to counsel in a subsequent postconviction proceeding. *Erickson v. State*, 725 N.W.2d 532, 537 (Minn.2007); *Hathaway v. State*, 741 N.W.2d 875, 880 (Minn.2007).

Barnes was entitled to and received the assistance of counsel on his direct appeal. Therefore, Barnes has had the one meaningful review of his criminal conviction

guaranteed by *Deegan*. Our conclusion on direct appeal that Barnes failed to develop the facts necessary to review his pro se ineffective assistance of trial counsel claim based on the failure to present any defense medical expert testimony, does not alter this analysis. Had Barnes wanted to develop his ineffective assistance of counsel claim during direct appeal, he had the opportunity to do so. Barnes could have asked to stay his direct appeal in order to pursue postconviction evidentiary proceedings. *See Roby v. State*, 531 N.W.2d 482, 484 n. 1 (Minn.1995). This would have allowed Barnes to develop the evidence necessary to allow our court to review the claim during the direct appeal. Nonetheless, the fact that, following a direct appeal in which a defendant was represented by counsel, the defendant is able to develop a postconviction claim does not renew the defendant's right to counsel under the Minnesota Constitution.

We hold that Barnes' right to counsel under *Deegan* has been satisfied and, as a result, he does not have a right to counsel in asserting his postconviction claim. We deny Barnes' request that we remand his claim for a new postconviction evidentiary hearing and affirm the postconviction court's determinations on Barnes' postconviction claims.

Affirmed.