*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1632**

Terry Lynn Olson, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent

**Filed August 17, 2015
Affirmed
Worke, Judge**

Wright County District Court
File No. 86-K4-05-003795

David T. Schultz, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota; and

Julie K. Jones, Sara L. Martin, Innocence Project of Minnesota, St. Louis Park, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Thomas N. Kelly, Wright County Attorney, Greg T. Kryzer, Assistant County Attorney, Buffalo, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Stoneburner, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the denial of his petition for postconviction relief, arguing that the district court erred by ruling that his claims of newly discovered evidence and ineffective assistance of trial counsel are procedurally barred and that he failed to show that his appellate counsel was ineffective. We affirm.

**FACTS**

On August 11, 1979, police found Jeffrey Hammill's body on County Road 12 in Wright County. Hammill had been severely beaten and died from traumatic head injuries. The case was unsolved until it was reopened in 2003.

Officers used evidence collected during the original investigation to piece together the events leading to Hammill's death. They determined that Hammill left a bar with appellant Terry Lynn Olson and Dale Todd and went to a house party. When Hammill wanted a ride home, but was refused a ride, he began walking on Highway 12. Later, two witnesses who had driven on Highway 12 reported seeing four or five men in or around a dark-colored car that appeared to be a Chevrolet Impala. Because Todd drove a dark-colored Impala, the police searched his car, but did not find any evidence connected to Hammill's death.

In September 2003, during an interview with Todd, an officer told him that witnesses saw his car on Highway 12 around the time Hammill was killed. Officers falsely represented that they had evidence of hair and blood from a bat that had been seized from Todd's car from when it was searched in 1979. Todd admitted that after

2

Hammill left the party, he, Olson, and Ron Michaels left the party, and drove to Highway 12 where they encountered Hammill. Todd claimed that Olson and Michaels argued with Hammill.

In 2005, a grand jury indicted Olson, Todd, and Michaels for Hammill's murder. In July 2006, Todd pleaded guilty to aiding an offender in exchange for his testimony against Olson and Michaels. Michaels's jury trial began in November 2006. Todd testified that he drove to Highway 12 with Olson and Michaels where they encountered Hammill. Olson and Michaels got out of the car and argued with Hammill; and Olson and Michaels opened the car's trunk, which contained items that might have been used in the murder. Todd testified that he did not see what happened, but stated that when Olson and Michaels got back in the car, Michaels announced that Hammill "won't be needing a ride home." Todd then changed his story and said, "I didn't do this," and "we didn't do this." When the prosecutor asked Todd why he admitted his involvement to the police, he replied, "I didn't want to go to jail for something I didn't do." The jury acquitted Michaels.

Olson's trial began on August 10, 2007. Todd again testified that after Hammill left the party, he, Olson, and Michaels left the party. He stated that he thought he was driving toward Buffalo, thought that he saw Hammill, and thought that he pulled over when he saw Hammill. Olson and Michaels got out of the car and Todd heard arguing. Todd might have seen a little pushing and he saw Olson "nudge" Hammill. He did not know if Olson was mad at Hammill, but he thought that Hammill was mad because they did not give him a ride. Todd did not remember if anybody got anything out of the trunk.

3

But after reviewing his testimony from Michaels's trial, Todd stated that he believed that the trunk was open. When Olson and Michaels got back into the vehicle, they decided that if Hammill was "being an ass, he can walk home," and Michaels said, "Let's go." But after reviewing his testimony from Michaels's trial, Todd stated that when Michaels got into the vehicle he stated that Hammill "won't be needing a ride home." They returned to the party and Todd testified that he might have called 911 to report that there could be a person on the road.

Olson's attorney and the prosecutor asked Todd about his testimony at Michaels's trial and questioned which version was true. Olson's attorney asked Todd if he said "we didn't do this" at Michaels's trial. Todd acknowledged that he had. But he stated that he had been truthful at Olson's trial.

Several inmates who spent time in jail with Olson testified that Olson had either confessed to killing Hammill or admitted that he was involved in Hammill's death. But other inmates testified that Olson maintained his innocence. Olson's attorney argued that the inmates who implicated Olson were "snitches" who lied to receive shorter sentences.

A jury found Olson guilty of second- and third-degree murder. Olson filed a direct appeal, challenging the district court's decision to allow the chief investigator to sit at the prosecutor's table during trial and the sufficiency of the evidence supporting his convictions. *See State v. Olson*, No. A08-0084, 2009 WL 2147262, at *1 (Minn. App. July 21, 2009), *review denied* (Minn. Oct. 20, 2009). Olson also filed a pro se supplemental brief, raising several claims, including a claim that the prosecutor

4

knowingly allowed Todd to present perjured testimony. This court affirmed Olson's convictions.

On December 22, 2010, Olson challenged his sentence. The district court denied Olson relief, and he appealed. This court affirmed the district court's decision. *See Olson v. State*, No. A11-0696, 2012 WL 254485 (Minn. App. Jan. 30, 2012), *review denied* (Minn. Apr. 25, 2012).

On January 18, 2012, Olson petitioned for postconviction relief, arguing that his trial counsel was ineffective for mishandling Todd as a witness, failing to submit Todd's recantation as substantive evidence, failing to call witnesses to impeach Todd's testimony, failing to retain an expert witness to explain false confessions, and failing to question the medical examiner regarding her reason for changing the manner of death on Hammill's death certificate. He also argued that his appellate counsel was ineffective for failing to call attention to the fact that Todd's recanted testimony was admitted only as impeachment evidence. The district court determined that Olson was barred from raising claims about trial counsel because he knew, or should have known, about them when he filed his direct appeal. The district court, however, determined that Olson was entitled to a hearing on his ineffective-assistance-of-appellate-counsel claim.

In May 2013, Olson's appellate counsel learned, after meeting with Todd, that Todd had experienced a "nervous breakdown" after Michaels's trial and had received mental-health treatment while he was incarcerated. On June 26, 2013, Olson filed an amended petition, arguing that he was entitled to a new trial because the state failed to disclose Todd's mental-health records and statements Todd made to a nurse.

The district court denied Olson's amended petition. The district court found that during Olson's trial, defense counsel cross-examined Todd regarding his mental-health history. Todd admitted that he was being treated for an anxiety disorder as early as 2003. He also stated that he began medication right after Michaels's trial. The district court determined that because Olson knew about Todd's mental health, cross-examined him about it, and knew that Todd received medication before Olson's trial, Olson was procedurally barred from raising this claim.

On July 21, 2014, after an extensive evidentiary hearing on Olson's ineffective-assistance-of-appellate-counsel claim, the district court denied Olson's petition. This appeal follows.

**D E C I S I O N**

This court reviews a denial of a petition for postconviction relief for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted). "When reviewing a postconviction court's decisions, [this court] examine[s] only whether the postconviction court's findings are supported by sufficient evidence." *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007). But this court reviews issues of law de novo. *Id.*

Olson challenges the district court's conclusion that the majority of his claims are procedurally barred, or *Knaffla*-barred. *See State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (stating that a postconviction petitioner is not entitled to relief for claims that he raised in his direct appeal or claims that he did not raise but either knew

6

about or should have known about when he directly appealed).  There are two exceptions to the *Knaffla* rule.  *Leake*, 737 N.W.2d at 535.   First, if a claim is known at the time of direct appeal but is not raised, it will not be barred if the claim is so novel "that its legal basis was not reasonably available when direct appeal was taken."  *Id.*  Second, even if a claim's legal basis was available when direct appeal was taken, it may be reviewed "when fairness so requires and when the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal."  *Id.* (quotation omitted).  This court reviews a denial of postconviction relief based on the *Knaffla* rule for an abuse of discretion.  *Quick v. State*, 692 N.W.2d 438, 439 (Minn. 2005).

### *Evidence of mental-health history*

Olson argues that the state's failure to disclose information regarding Todd's mental health was a *Brady* violation because the evidence was exculpatory, the evidence was suppressed by the state, and Olson was prejudiced.  The district court determined that this claim was *Knaffla*-barred.  The district court did not abuse its discretion.

First, during Olson's trial, his attorney cross-examined Todd regarding his mental health.  Thus, Olson was aware of any issues with Todd's mental health at the time of his trial.  Second, Olson claims that Todd's statement to a nurse was exculpatory because he told her that he lied at Michaels's trial in order to get a good deal, but then repudiated against his penal interest.  This was also known at the time of Olson's trial.  Todd testified that "if he cooperated, [he] would get one deal[] [a]nd if [he] were found to be uncooperative, [he would] get another deal"; if he cooperated he would receive jail time

7

and if he did not cooperate he would go to prison. Additionally, defense counsel cross-examined Todd regarding his repudiated testimony at Michaels's trial.

Third, it is difficult to see how Olson was prejudiced. He claims that "[a]s the supposed 'eyewitness' to the alleged murder, Todd was the heart of the prosecution's case," and that "[s]ince evidence of Todd's statement [to the nurse] directly contradicts his incriminatory testimony, its concealment was prejudicial." But Todd did not testify that he witnessed the murder. And Todd's testimony was equivocal—he stated that he thought he was driving toward Buffalo, saw Hammill, and pulled over when he saw Hammill, and then might have seen pushing by Olson. He did not know if Olson was mad at Hammill, and he did not remember if anybody got anything out of the trunk. And the jury heard that Todd proclaimed innocence at Michaels's trial. As this court stated "[d]amning testimony also came from several inmates who . . . testified that Olson had either confessed to killing Hammill or admitted that he was involved in Hammill's death." *Olson*, 2009 WL 2147262, at \*2. It is difficult to see how Olson was prejudiced because the jury did not hear about Todd's statement to the nurse when they heard the same information from Todd.

Olson also argues that the state "sponsored false testimony by eliciting Todd's testimony at Olson's trial." Olson argued in his pro se supplement brief on direct appeal that the prosecutor knowingly allowed Todd to present perjured testimony. This court resolved this issue without discussion. *Id.*, at \*6. This issue is *Knaffla*-barred.

8

*Witness recantation*

Olson argues that he is entitled to a new trial based on Todd's 2012 affidavit recanting his testimony at Olson's trial. The district court determined that this claim was *Knaffla*-barred because Olson was aware that Todd recanted before his trial and impeached him on cross-examination. The district court did not abuse its discretion.

At Olson's trial, Todd was cross-examined regarding his recantation at Michaels's trial. The jury heard that during Michaels's trial, Todd stated: "I didn't do this. We didn't do this." Todd also stated during Michaels's trial that he confessed because he "didn't want to go to jail for something [he] didn't do."

Olson argues that Todd's 2012 affidavit recanting his testimony is newly discovered evidence because in it he recants his testimony from Olson's trial, not Michaels's trial. But at Michaels's trial, Todd stated that he did not leave the party with Michaels or Olson and that "[w]e didn't do this"—Olson was included in that recanted testimony. Todd stated in his affidavit from 2012 that at Michaels's trial he admitted that "neither [] Michaels, [] Olson nor I had anything to do with the death of Hammill."

Additionally, Olson claims that for the first time in his affidavit from 2012 Todd explains his false statement. But the district court received a letter from Todd on September 11, 2007, which was forwarded to Olson's counsel on September 13, 2007. Todd stated: "We were innocent of the charges. I said things because I was afraid to go to jail for life for something we did not do." His testimony from Michaels's trial also includes his reason—"I didn't want to go to jail for something I didn't do." In the 2012 affidavit, Todd stated that he made false statements because he "was terrified that the

9

police would charge [him] with murder," and because the "police manipulated him, [he] was scared and [he] stopped trusting [his] own memory of what happened." This assertion that Todd was manipulated by the police is hinted at in Olson's claim on direct appeal that the investigating officer should not have been allowed to sit at the prosecutor's table during trial. *See id.*, at *3. Olson argued that "witnesses may have been influenced by [the deputy's] presence." *Id.* The district court did not abuse its discretion in concluding that this claim was *Knaffla*-barred.

### *Trial counsel*

The district court ruled that Olson's ineffective-assistance-of-trial-counsel claim is *Knaffla*-barred because it should have been raised at the time of direct appeal. *Knaffla* bars a postconviction ineffective-assistance-of-trial-counsel claim if the claim is based solely on the trial record and was known or should have been known at the time of direct appeal. *Evans v. State*, 788 N.W.2d 38, 44 (Minn. 2010). *Knaffla* does not bar an ineffective-assistance-of-trial-counsel claim if the postconviction court requires additional evidence regarding an alleged act or omission committed off the record to be able to determine the merits of the claim. *Barnes v. State*, 768 N.W.2d 359, 364 (Minn. 2009).

Olson argues that his trial counsel was ineffective for failing to (1) discover and/or utilize exonerating statements made by Todd, (2) call an expert to explain Todd's false confession, (3) adequately investigate and prepare for the medical examiner's testimony, and (4) investigate Todd's mental health. Trial counsel used Todd's recanted testimony from Michaels's trial. Todd testified that he told the truth at Olson's trial; thus, an expert

10

on a false confession was not necessary. Todd was also questioned about his mental health. Therefore, the district court did not abuse its discretion in determining that these claims are *Knaffla*-barred.

But even if the claims are not *Knaffla*-barred, Olson does not raise a claim that is reviewable. Because "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another[,] [w]hat evidence to present to the jury, including which witnesses to call, represents an attorney's decision regarding trial tactics and lies within the . . . discretion of trial counsel." *State v. Doppler*, 590 N.W.2d 627, 633 (Minn. 1999) (quotation and citation omitted). Appellate courts, having the benefit of hindsight, do not review for competency matters of trial strategy. *Id.*

Failing to discover and/or utilize exonerating statements made by Todd, failing to adequately investigate and prepare for the medical examiner's testimony, and failing to investigate Todd's mental health are matters of trial preparation. *See State v. Caldwell*, 803 N.W.2d 373, 387 (Minn. 2011) (stating that "limited trial preparation" does not establish inadequate representation; the focus is on the adversarial process not the defendant's assessment of counsel's preparation). Failing to call an expert to explain Todd's false confession involves trial strategy. *See Doppler*, 590 N.W.2d at 633.

*Appellate counsel*

The district court granted Olson a hearing on his ineffective-assistance-of-appellate-counsel claim before denying relief. *See Schneider v. State*, 725 N.W.2d 516, 521 (Minn. 2007) (stating that claims of ineffective assistance of appellate counsel are

11

not *Knaffla*-barred in a first postconviction appeal because they could not have been raised earlier). Olson bears the burden of proof on establishing the ineffective-assistance-of-counsel claim. *State v. Jackson*, 726 N.W.2d 454, 463 (Minn. 2007). To satisfy his burden, Olson "must do more than offer conclusory, argumentative assertions, without factual support." *See State v. Turnage*, 729 N.W.2d 593, 599 (Minn. 2007). To prevail, Olson must show that "(1) his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013); *see Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984). An appellate court need not analyze both prongs of the *Strickland* test if an analysis of one prong is determinative. *Leake v. State*, 767 N.W.2d 5, 10 (Minn. 2009). This court reviews the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo. *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013).

"[C]ounsel is under a duty to raise only meritorious claims" and "does not act unreasonably by not asserting claims that counsel could have legitimately concluded would not prevail." *Wright v. State*, 765 N.W.2d 85, 91 (Minn. 2009); *Case v. State*, 364 N.W.2d 797, 800 (Minn. 1985) (stating that "counsel has no duty to include claims which would detract from other more meritorious issues").

Olson argues that appellate counsel was ineffective for failing to challenge trial counsels' failure to (1) introduce Todd's prior testimony as substantive evidence, (2) call certain witnesses, (3) file a post-trial motion after receiving Todd's letter in which he asserted that Olson was innocent, (4) consult an expert on false confessions,

12

(5) investigate Todd's mental illness, and (6) prepare for the medical examiner's testimony.

Appellate counsel legitimately concluded not to challenge trial counsel strategies, because trial strategy is within trial counsel's discretion and is not reviewable. *See Doppler*, 590 N.W.2d at 633 (stating that matters of trial strategy, including what evidence to present and which witnesses to call, lie within the discretion of trial counsel and will not be second-guessed by appellate courts); *see also State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013) (stating that the extent of any investigation is a part of trial strategy, and includes whether to interview and call prospective witnesses, and should not be readily second-guessed); *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn. 1979) (stating that an attorney's strategic decisions include what witnesses to call, whether and how to conduct cross-examination, and what trial motions should be made). Olson fails to show that appellate counsel's performance was unreasonable.

Olson also claims that his appellate counsel was ineffective for failing to recognize that Todd's recantation at Michaels's trial was used at Olson's trial only for impeachment. But as the district court determined, even though Todd's prior statement was admissible substantively, there is no requirement on how this evidence should be admitted. The district court also correctly determined that the parties treated Todd's prior statement as substantive evidence, and Olson's attorney read Todd's prior statement during closing argument.

In *State v. Campbell*, the defendant argued that prior inconsistent statements, admissible only for impeachment purposes, were erroneously admitted as substantive

13

evidence. 861 N.W.2d 95, 101 (Minn. 2015). The defendant argued that the statements substantially influenced the jury decision. *Id.* The supreme court stated, "without deciding [whether the] statements were erroneously admitted as substantive evidence, we conclude that any such error did not affect [the defendant's] substantial rights." *Id.* Similarly, Olson fails to show that there is a reasonable likelihood that the alleged error substantially affected the verdict. The jury heard Todd's testimony from Michaels's trial that "[w]e didn't do this," and they heard him testify that he was being truthful when he implicated Olson at Olson's trial. The jury had to weigh Todd's credibility. In addition to the other evidence from several inmates, there is not a reasonable likelihood that any alleged error substantially affected the verdict.

Olson also claims that his appellate counsel was ineffective for failing to raise the issue of the district court's exclusion of testimony from an inmate, C.P. Defense counsel sought to call C.P. as a rebuttal witness to testify that during a conversation with Todd, Todd stated that he risked losing his plea deal if he did not testify at Olson's trial. Todd testified that he was offered a deal if he cooperated. He stated that if he did not cooperate he would go to prison, and Todd did go to prison after Michaels's trial. Thus, the jury heard that Todd would have received a better deal had he cooperated at Michaels's trial, and it is a logical inference that he feared a similar consequence if he did not cooperate at Olson's trial. The district court correctly determined that C.P.'s testimony would have been cumulative, and that there was no reasonable likelihood that an error in refusing to allow him to testify had a significant effect on the verdict.

**Affirmed.**

14